RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 09a0173p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

                                                    No. 08-1048

        *v.*

LEE HENRY BERRY,
                    *Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 05-20048-001—Thomas L. Ludington, District Judge.

Argued: March 12, 2009

Decided and Filed: May 14, 2009

Before: MARTIN and GILMAN, Circuit Judges; ZOUHARY, District Judge.[*]

————————————

## COUNSEL

**ARGUED:** Robert J. Dunn, LAW OFFICE, Bay City, Michigan, for Appellant. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee. **ON BRIEF:** Shawn M. Sutton, LAW OFFICE, Bay City, Michigan, for Appellant. Daniel R. Hurley, ASSISTANT UNITED STATES ATTORNEY, Detroit, Michigan, for Appellee.

————————————

## OPINION

————————————

JACK ZOUHARY, District Judge. Defendant Lee Henry Berry appeals his convictions and sentencing in the district court. A jury convicted Berry on three counts of possession with intent to distribute controlled substances and on one count of being

————————————

[*]The Honorable Jack Zouhary, United States District Judge for the Northern District of Ohio, sitting by designation.

1

a felon in possession of a firearm. Prior to trial, Berry moved to suppress some of the evidence against him, arguing the evidence was seized pursuant to an invalid search warrant. The district court denied the motion. A jury convicted Berry, and the district court sentenced him to 360 months of imprisonment, to run consecutive to his term of imprisonment for violating the terms of his probation related to a state offense. Berry argues on appeal that the district court committed reversible errors when it denied his motion to suppress and when it sentenced him. For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

In 2005, the Bay Area Narcotics Enforcement Team (BAYANET), a narcotics task force in the Saginaw and Bay City, Michigan area, was investigating an alleged drug operation involving Melvin Hoskins. Hoskins lived at 1226 Asbury Court, Saginaw Township, Michigan. Sergeant Greg Potts received a tip from a confidential informant that one Lee Henry Berry was living at 1228 Asbury Court, the same duplex as Hoskins. Sergeant Potts and other officers were familiar with Berry because of his prior criminal history, including a 2000 drug trafficking conviction for which he was serving lifetime probation. The tip that Berry was living at the Saginaw Township address was significant because Berry's lifetime probation required him to immediately notify his probation officer of any change of address, yet Berry last told his probation officer he lived in Bay City.

After Berry was observed at 1228 Asbury Court, Sergeant Potts reviewed records of the Michigan Secretary of State and discovered Berry had listed the Asbury Court address as his residence on his driver's license, as well as on several vehicle titles. Another task force officer, Wayne Stockmeyer, interviewed the woman who owned the Asbury Court property, Sugi Ponnampalam. Ponnampalam said a man named "Alvin King" rented the property, but identified Berry from a photo as the man who rented and lived at 1228 Asbury Court. She said Berry paid monthly rent of $675 in cash and had lived there for three years.

Law enforcement determined it would attempt to arrest Berry at Asbury Court for violating the terms of his probation by failing to register the residence with his probation officer. At approximately 10:00 p.m. on April 29, 2005, task force officers saw Berry alone, driving a Cadillac into the driveway at 1228 Asbury Court. The officers arrested him as he exited the car and then searched the car incident to the arrest. On the floor of the car, immediately in front of the driver's seat, they found a number of rocks of suspected crack cocaine in plastic sandwich bags. Officers field-tested the drugs and confirmed the presence of cocaine.

The officers then decided to obtain a search warrant for 1228 Asbury Court. Sergeant Potts swore out the warrant affidavit. In the affidavit, Potts sought permission to search the Asbury Court residence for evidence of two crimes: (1) evidence of drugs; and (2) evidence establishing that Berry lived at 1228 Asbury Court in violation of the terms of his probation. In support of the requested search, Paragraph 4 of the affidavit contained the following information:

> It has been my personal experience and I have been so informed by many other Police Officers whom I know to be truthful . . . that persons present in the residence or on the property (or entering or leaving the residence or property) where a search warrant for controlled substances is being executed oftentimes conceal controlled substances on their persons (this can be because they are selling or buying the substances or in an attempt to conceal the substances from the Police search); that vehicle's [sic] parked on the premise of places where controlled substances are found or sold oftentimes contain controlled substances . . . . It has further been my experience that people dealing and using controlled substances will oftentimes use the motor vehicles to store and transport controlled substances . . . . Furthermore, I know from my training and experience that people who sell drugs often possess firearms for the purpose of protecting themselves and the drugs from thefts or searches.

> I have previously been told by a confidential informant (CI) that Lee Henry Berry was living at the residence described in paragraph 3 above. Additionally, the CI pointed the residence out to me. I have also checked the Secretary of State computer via the LEIN system and found that Lee Henry Berry's operator's license address is listed as 1228 Asbury Ct, Saginaw, Michigan, which is also the address listed for various vehicle [sic] which he is listed as owning. Furthermore, Officer

Wayne Stockmeyer of the Bay City Police department contacted Sugi Ponnampalam, the owner of the premises described in paragraph 3 above. She stated that she is the owner of 1228 Asbury Ct, and that she is currently renting the residence to an individual she knows as Alvin King, an older black male, and he pays $675 per month cash for renting the unit. Officer Stockmeyer showed Sugi Ponnampalam a photograph of Lee Henry Berry, and she identified the photograph as being the person she knows as Alvin King, the renter of the duplex. She said that she has owned the dwelling for about 3 years and that the person she knows as Alvin King has lived there the entire time.

I know that Lee Henry Berry was convicted of delivery or attempted possession with intent to deliver less than 50 grams of a mixture containing cocaine approximately 2/23/2000, before Honorable William J. Caprathe, Bay County Circuit Judge, and that he was sentence[d] to lifetime probation. I have talked with his probation office[r], Steve Marshall, who informed me that according to the Probation Department's records, Lee Henry Berry lists his residence as being in the City of Bay City. I also know by having seen a listing of the "special conditions" of Lee Berry's probation that he is required to "Notify the probation officer immediately of any change of address or employment status." Steve Marshall told me that Lee Berry has never reported that he lives in Saginaw Township.

During the evening hours of April 29, 2005, Lee Henry Berry was arrested by Officer Stockmeyer and officers from the Bay Area Narcotics Enforcement Team (BAYANET) for violating probation. The arrest took place outside of the residence described in paragraph 3 above after he was seen arriving in a car. Officer Stockmeyer told me that Lee Berry was the driver and only occupant of the car. Officer Stockmeyer also told me that as part of the search incident to arrest he found a number of rocks of what appeared to be crack cocaine on the floor of the car under where Lee Berry was sitting. Stockmeyer told me that he field tested the crack cocaine and it tested positive for the presence of cocaine.

The state judge signed the warrant at 12:10 a.m. on April 30, 2005, authorizing the officers to search for the following evidence at 1228 Asbury Court: (1) cocaine and other controlled substances; (2) residency documents and similar items showing the identity of the persons residing there; and (3) a long list of standard drug-search items, including scales, packaging materials, sales ledgers, currency, and firearms.

Officers conducted the search during the early morning hours of April 30. In the house, officers found significant evidence of drug trafficking, including four digital

scales, known cutting agents, packaging materials, several firearms, ammunition, and quantities of drugs. In a safe in the bedroom, they found a single rock of crack cocaine weighing approximately 17 grams and a zip-loc bag containing 12 grams of powder cocaine. Pills were also found in the house, including 110 tablets of diazepam. Two handguns were in the safe with the drugs, and another handgun was in the bedroom, under a mattress. Two of the firearms had been reported stolen several years earlier.

The case was eventually referred to federal authorities. In November 2005, Berry was indicted on six counts -- four drug charges and two firearm charges:

- Count One charged Berry with possession with intent to distribute the cocaine base found in the vehicle.

- Count Two charged Berry with possession with intent to distribute more than five grams of cocaine base found in the safe.

- Count Three charged Berry with possession with intent to distribute more than five grams of powder cocaine found in the safe.

- Count Four charged Berry with possession with intent to distribute diazepam.

- Count Five charged Berry with being a felon in possession of a firearm.

- Count Six charged Berry with knowingly possessing stolen firearms.

Prior to trial, Berry moved for suppression of the evidence found during the search of his residence on the grounds that the warrant was invalid on its face. Berry argued the underlying affidavit failed to establish the requisite nexus between 1228 Asbury Court and drug activity. The district court denied the motion, finding probable cause to search the house based on both the probation violation and the drugs found in Berry's car. The district court also held that even if the warrant lacked probable cause, the good-faith exception applied to prevent exclusion of the evidence.

In September 2007, a jury convicted Berry on Counts One, Two, Three, and Five, but acquitted him of the diazepam and stolen firearms charges.

**MOTION TO SUPPRESS**

Berry  argues the search warrant for 1228 Asbury Court lacked probable cause. Specifically, Berry argues "[t]here was absolutely no evidence available to the police at the time they obtained the Affidavit that there were any drugs in the house and [Berry] did not have access to the house at any time after being arrested at 1228 Asbury Court" (Appellant Br., p. 11).  Considering this same argument on the motion to suppress, the district court found that the "affidavit contained sufficient information for a reviewing magistrate to reasonably conclude that defendant Berry was residing at the Saginaw residence thus establishing a probation violation or that contraband likely would be found at the residence" (JA 36).  The district court further noted that even if the underlying affidavit lacked probable cause, the good-faith exception applied (JA 37).

When reviewing a district court's decision on a motion to suppress, the Court uses a mixed standard of review: findings of fact are reviewed for clear error and conclusions of law are reviewed de novo. *United States v. Davis*, 514 F.3d 596, 607 (6th Cir. 2008).  The review of the sufficiency of the evidence supporting probable cause is limited to the information presented in the four corners of the affidavit. *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005).

Under the Fourth Amendment, "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  "[S]o long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (*quoting Jones v. United States*, 362 U.S. 257, 271 (1960)).  In order to conclude that an affidavit establishes probable cause, the issuing judge must find that "given all the circumstances set forth in the affidavit . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* at 238.

To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc).  In other words, "the

affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of a crime.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (*quoting Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Berry cites the court's decision in *McPhearson* in support of his argument that the affidavit here lacked probable cause.  In *McPhearson*, a 2-1 majority upheld the district court's grant of defendant's motion to suppress.  In that case, police officers arrested defendant at his home on an outstanding warrant for simple assault.  *Id.* at 520. During the pat-down incident to arrest, the officers located crack cocaine in defendant's front pocket.  The officers then obtained a search warrant to search for drug activity in defendant's home.  The underlying affidavit stated that defendant was wanted for simple assault, that the officers executed the arrest warrant at defendant's home, and that a search incident to the arrest turned up crack cocaine on defendant's person.  *Id.* at 521.

The *McPhearson* court held the affidavit lacked probable cause because it failed to establish the requisite nexus between defendant's home and drugs.  The affidavit did nothing more than state where defendant resided and that defendant was arrested for a non-drug offense with a quantity of crack cocaine on his person. *Id.* at 524.

The court rejected the government's argument that defendant's arrest outside his home with drugs on his person was sufficient to establish a fair probability that his residence would contain evidence of other drug-related crimes.  However, the court further noted that had the affidavit contained additional facts, such as defendant was a known drug dealer, probable cause may have been present.  *Id.* at 525 ("In the absence of any facts connecting [defendant] to drug trafficking, the affidavit in this case cannot support the inference that evidence of wrongdoing would be found in [defendant's] home because drugs were found on his person.").

Although a defendant's status as a drug dealer, standing alone, does not give rise to a fair probability that drugs will be found in defendant's home, *Frazier*, 423 F.3d at 533, there is support for the proposition that status as a drug dealer plus observation of

drug activity near defendant's home is sufficient to establish probable cause to search the home. *Id.* at 532-33 (*citing United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Blair*, 214 F.3d 690, 696 (6th Cir. 2000); *United States v. Jones*, 159 F.3d 969, 974 (6th Cir. 1998); *United States v. Caicedo*, 85 F.3d 1184, 1193 (6th Cir. 1996)).

The government here relies heavily on *United States v. Miggins*, 302 F.3d 384 (6th Cir. 2002). In *Miggins*, the court held the search warrant contained probable cause to search defendant's apartment, even though no drug activity was observed occurring there. The court found probable cause in the fact that defendant was a known drug dealer and that defendant had recently signed for drugs delivered via FedEx to a different home. *Id.* at 393-94.

Here, we find the warrant established probable cause. The underlying affidavit specified that Berry was known to be involved in drug trafficking based on a prior conviction. Further, the warrant indicated that Berry was arrested for violating his probation for that drug conviction and that officers discovered crack cocaine in Berry's car during a search conducted incident to Berry's arrest in the driveway of 1228 Asbury Court. In addition, the warrant specified that Berry was renting the residence under an alias and that he paid his rent in cash. Finally, in the underlying affidavit, Sergeant Potts stated that, based on his experience, vehicles "parked on the premise of the places where controlled substances are found or sold oftentimes contain controlled substances." Simply put, the affidavit contained information establishing a nexus that the *McPhearson* affidavit failed to do. Certainly the affidavit established "a fair probability that contraband or evidence of a [drug] crime" would be found at 1228 Asbury Court. *Gates,* 462 U.S. at 238.

## REASONABLENESS OF SENTENCE

At the December 2007 sentencing hearing, defense counsel concurred with the Presentence Report (PSR) that Berry's Guidelines range was 360 months to life imprisonment. Defense counsel also acknowledged that the district court was statutorily required to impose a term of at least 180 months for Berry's firearm conviction pursuant

to the enhancement in 18 U.S.C. § 924(e), and that the Sentencing Commission had issued a policy statement under Guideline § 5G1.3 recommending Berry's federal sentence be imposed consecutive to any state court sentence imposed for the probation violation.

Berry's mitigation arguments in support of a downward variance, under 18 U.S.C. § 3553(a), centered on the fact that he was 61 years old and would be much older upon release from prison, especially if the sentence ran consecutive to his state sentence, and also that his prior convictions were insignificant. Berry further argued that others occupied the home where the drugs were found and there was no evidence anyone actually sold drugs, a statement ostensibly about Berry's culpability rather than a legitimate argument supporting a lower sentence. The government did not oppose Berry's request for a downward variance, but noted the district court was statutorily required to impose a minimum sentence of 180 months for conviction as a felon in possession of a firearm.

The district court acknowledged counsel's argument about Berry's age, but indicated his age cut both ways because Berry was now a mature man who continued to commit crimes, not an immature young man who could be expected to grow up. The district court noted that Berry's conduct for this conviction fit into a lifetime pattern of criminal conduct, spanning at least sixteen convictions, including three firearms convictions and several drug trafficking convictions.

The district court concluded that the Guidelines prescribed the appropriate sentence range and that there was no basis for a departure or variance. The district court sentenced Berry to 360 months of imprisonment, to be served consecutive to his state sentence.

**Procedural Reasonableness of Sentence**

Berry claims the district court's explanation was insufficient, and as a result, his sentence must be vacated. In response to Berry's arguments about age, the court noted that although the Guidelines direct sentencing courts not to consider an offender's age,

the court found it to be a relevant factor that cut both ways. In response to the argument that prior convictions were insignificant, the court noted that Berry had sixteen prior convictions, seven of them felonies, and three of these felonies involved possession of firearms.

Finally, the district court stated that it had "separately considered the factors that we are directed to statutorily by Title 18 United States Code 3553(a)," and found no rationale for departing from the Guidelines (JA 308). The court then sentenced Berry to 360 months of imprisonment, to be served consecutive to any state sentence. After announcing the sentence, the court asked if defense counsel had "any questions or objections to the sentence being imposed," to which defense counsel answered "no."

Berry's claim is reviewed for plain error because after the district court pronounced the sentence and asked if Berry had any objections, defense counsel answered in the negative. *See United States v. Bostic*, 371 F.3d 865, 872-73 (6th Cir. 2004). The proper standard under these circumstances requires Berry to show: "(1) error; (2) that was obvious or clear; (3) that affected defendant's substantial rights; and (4) that affected the fairness, integrity, or public reputation of the judicial proceedings." *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc) (internal citations omitted).

Despite the district court's brief explanation, it was reasonable and, in any event, any potential error was not "plain." "Although Congress requires a court to give 'the reasons' for its sentence, 18 U.S.C. § 3553(c), it does not say that courts must give the reasons for rejecting any and all arguments by the parties for alternative sentences." *Vonner*, 516 F.3d at 387. The sentencing judge must consider the list of sentencing factors articulated in 18 U.S.C. § 3553(a); "such consideration, however, need not be evidenced explicitly." *United States v. Williams*, 436 F.3d 706, 708 (6th Cir. 2006). Furthermore, when a sentence is imposed within the applicable Guidelines range, as here, the district court need not explicitly state that it has considered and rejected each of defendant's arguments. *Rita v. United States*, 551 U.S. 338, 357, 127 S. Ct. 2456, 2468-69 (2007).

The district court explicitly addressed Berry's key argument concerning age and noted his extensive and violent criminal history.  Further, the court sentenced Berry within the Guidelines, and at the low end at that, reducing the need for extensive explanation.  Finally, a district court is not required to engage in a more thorough or detailed explanation for refusing a downward variance just because the government elects not to oppose such a request.

### Substantive Reasonableness of Sentence

Berry faced a mandatory minimum sentence of 180 months and a Guidelines range of 360 months to life imprisonment.  The district court sentenced him to 360 months.

"Assuming that the district court's sentencing decision is procedurally sound, [the court] should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard." *Gall v. United States*, ____U.S.____, 128 S. Ct. 586, 597 (2007).  This Court must affirm a sentence so long as it is "reasonable." *Williams*, 436 F.3d at 707.  A sentence within the properly calculated Guidelines range is afforded "a rebuttable presumption of reasonableness." *Id.* at 708.  "[T]he presumption of reasonableness merely 'reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, both the sentencing judge and the Sentencing Commission will have reached the same conclusion as to the proper sentence in the particular case.'" *United States v. Wilms*, 495 F.3d 277, 281 (6th Cir. 2007) (*quoting Rita*, 551 U.S. at 347, 127 S. Ct. at 2463).

Berry's argument focuses on his age, noting that he will be in his nineties upon release.  Guideline § 5H1.1 is a policy statement that recommends a sentencing judge not consider age when determining whether a departure is warranted.  However, this Court has recognized that a downward variance can be appropriate when a defendant is particularly old. *See, e.g., United States v. Davis*, 537 F.3d 611, 615 (6th Cir. 2008).  It is clear the district court considered Berry's age, but noted it "cut both ways," finding Berry's age simply evidenced a life of continuing crime and inability to rehabilitate. *See*

*United States v. Williams*, 287 F. App'x 476, 478 (6th Cir. 2008) (noting defendant's criminal activity escalated as he aged). In sum, the district court could have (and did) consider Berry's age, and did not abuse its discretion in imposing the sentence.

## Consecutive Nature of Sentence

At the time of his arrest, Berry was on lifetime probation for a prior drug crime. At his sentencing hearing, Berry requested that the district court impose the federal sentence concurrent to his state sentence, noting his age, the small quantities of cocaine involved in his prior convictions, and the indeterminate date of his parole from state prison. The court ordered that he serve his 360-month federal sentence consecutive to his undischarged state sentence.

When a defendant is serving an undischarged prior sentence, the district court may impose a consecutive or concurrent sentence. 18 U.S.C. § 3584. The court must consider the factors listed in 18 U.S.C. § 3553(a) in making this determination. *See* 18 U.S.C. § 3584(b). Furthermore, the court should also consider the relevant Guidelines recommendations and policy statements. 18 U.S.C. § 3553(a)(4). Application Note 3(A) to Guidelines § 5G1.3(c) provides guidance, noting that a sentencing court should consider:

> (i)     the factors set forth in 18 U.S.C. § 3584 (referencing 18 U.S.C. § 3553(a));
> (ii)    the type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence;
> (iii)   the time served on the undischarged sentence and the time likely to be served before release;
> (iv)    the fact that the prior undischarged sentence may have been imposed in state court rather than federal court, or at a different time before the same or different federal court; and
> (v)     any other circumstance relevant to the determination of an appropriate sentence for the instant offense.

Further, Application Note 3(C) provides that when a defendant is on federal or on state parole or supervised release at the time of the instant offense, "the Commission

recommends that the sentence for the instant offense be imposed consecutively to the sentence imposed for the revocation."

A challenge to a court's decision to impose a consecutive or a concurrent sentence is not easily classified as "substantive" or "procedural." This is so because an evaluation of the substantive reasonableness of a decision to impose a consecutive sentence depends heavily upon an evaluation of the procedural reasonableness. *See United States v. Johnson*, 553 F.3d 990, 997-98 (6th Cir. 2009) (noting that to determine whether a district court abused its discretion in imposing a consecutive sentence under § 5G1.3, the court will look to "the record on appeal [for evidence] that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its determination").

The district court's decision whether to impose a concurrent or consecutive sentence pursuant to § 5G1.3 is reviewed for abuse of discretion. *United States v. Watford*, 468 F.3d 891, 916 (6th Cir. 2006). A court does not abuse its discretion when it "makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense." *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998). Although a district court retains discretion in imposing a consecutive or concurrent sentence, such discretion is not "unfettered" and "'the record on appeal should show that the district court turned its attention to § 5G1.3(c) and the relevant commentary in its determination of whether to impose a concurrent or consecutive sentence.'" *Johnson*, 553 F.3d at 997-98 (*quoting United States v. Covert*, 117 F.3d 940, 945 (6th Cir. 1997)).

At Berry's sentencing hearing, while asking for objections to the PSR and before imposing the sentence, the court noted, "there is a guideline recommendation that the sentences be imposed concurrently, but consecutive to the state sentence that the gentleman is currently serving," and Berry's counsel agreed that this was a correct articulation of the Guidelines.

The district court then recognized the Section 3553(a) factors and discussed Berry's age, the pattern of crime over his lifetime, his prior convictions, and concluded that it "did not find a rationale for departing from those guidelines or for a variance."

Although the court did not explicitly reference the § 5G1.3 considerations, the court did explicitly recognize the PSR discussion of that Guideline. After pronouncing Berry's sentence, the court simply stated: "Sentences are to be served concurrently with respect to each other, but the court in the exercise of its discretion direct that they be served consecutive to the Michigan Department of Correction sentence in its state case number 99 1541-FH."

Though brief, this statement, in conjunction with the court's invocation of Section 3553(a), as well as its reference to Berry's criminal record (indicating consideration of 18 U.S.C. § 3553(a)(1)) and that his earlier felonies involved firearms (suggesting consideration of 18 U.S.C. § 3553(a)(2)) is sufficient to demonstrate the imposition of the consecutive sentence was reasonable. We have never held that a district court is required to repeat a Section 3553(a) analysis in its consideration of the consecutive or concurrent nature of a sentence when the same reasons for rejecting a downward variance also support the decision for a consecutive sentence. Requiring district courts to conduct a separate Section 3553(a) analysis for the concurrent or consecutive nature of the sentence would be repetitious and unwarranted, and we hold that district courts have no such distinct obligation.

Moreover, it is clear from the sentencing colloquy and the PSR that the district court understood the type and length of Berry's state sentence and its indeterminate nature, as well as the separate nature of the state and federal offenses. The court also referenced the Sentencing Commission's recommendation of a consecutive sentence in the case of a probation violation. For these reasons, we conclude that the district court considered the factors relevant to its discretion to impose a sentence running consecutive to Berry's state sentence and thus did not abuse its discretion by imposing a consecutive sentence. *See Watford*, 468 F.3d at 916.

## CONCLUSION

For all of the reasons set forth above, the Court **AFFIRMS** both the denial of the motion to suppress and the within-Guidelines sentence imposed by the district court.