**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0436n.06

**No. 08-5195**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Jul 19, 2010**
LEONARD GREEN, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE MIDDLE |
| | ) | DISTRICT OF TENNESSEE |
| KEITH SMITH, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

BEFORE:  BOGGS, SUHRHEINRICH, and ROGERS, Circuit Judges.

**ROGERS, Circuit Judge.**  Defendant Keith Smith appeals his sentence, arguing that the district court abused its discretion by sentencing him to life imprisonment and by ordering his federal sentence to run consecutively to his state sentence.  Pursuant to a plea agreement, Smith pled guilty to a variety of federal offenses in district court, including conducting a continuing criminal enterprise, conspiracy to commit money laundering, obstruction of justice, and solicitation of the murder of a witness.  As part of his federal plea agreement, Smith also pled guilty to second-degree murder in state court.  The parties agree that Smith was responsible for more than 1000 kilograms of cocaine during the course of his criminal activity.  Because Smith's life sentence is a within-Guidelines sentence and is otherwise substantively reasonable, and because Smith has not shown that the district court abused its discretion by ordering his federal sentence to run consecutively to his state sentence, Smith's appeal lacks merit.

## I.

On March 14, 2005, and pursuant to a plea agreement with the government, Keith Smith pled guilty to the following counts of a Third Superseding Indictment in federal district court:

> [the] lesser included offense in Count One of conducting a continuing criminal enterprise in violation of 21 U.S.C. § 848(a). . . . Count Three (money laundering conspiracy), Count Four (engaging in unlawful monetary transaction relating to the purchase of a Lincoln Navigator), Count Five (possession of five kilograms or more of cocaine with intent to distribute in February 2003), Count Seven (possession of five kilograms or more of cocaine with intent to distribute in March 2003), Count Eight (obstruction of justice between February 28, 2003[,] and June 19, 2003), and Count Nine (soliciting the murder of a witness between February 28, 2003[,] and March 31, 2003). [Smith] . . . also agree[d] to the criminal forfeitures charged in Counts Ten and Eleven of the Third Superseding Indictment, including a money judgment of $5,000,000 on each of those two counts.

Plea Agree. ¶ 1. Smith also pled guilty to an additional charge, brought in an information rather than in the indictment, of "one count of possessing firearms in furtherance of drug trafficking crimes in violation of 18 U.S.C. § 924(c)." Plea Agree. ¶ 2.

At Smith's plea hearing, a government agent read the plea agreement's statement of facts into the record, at which time Smith confirmed that the facts were true and accurate. Smith stated that he had nothing to add to the statement of facts as read by the government agent.

According to the plea agreement, "[b]etween January 1998 and June 2003, defendant Keith Smith engaged in a continuing criminal enterprise involving over 1000 kilograms of cocaine as well as quantities of heroin and crack cocaine." Plea Agree. ¶ 5A. In 2001, an individual named Chris Gooch, who had previously cooperated with the government's investigation of another large-scale drug-trafficking conspiracy, obtained drugs from Smith. Plea Agree. ¶ 5R. At some point, Smith

began to suspect that Gooch was cooperating with a government investigation into Smith's activities; Smith "then made certain statements to DeSean Sanderson a/k/a Ham indicating that Gooch should be killed." *Id.* Sanderson then shot and killed Gooch. *Id.* Following Sanderson's arrest, Smith paid Sanderson's legal expenses. *Id.*

Smith frequently supplied his cousin, Charles Turner, with multiple kilograms of cocaine. Plea Agree. ¶¶ 5J, O, P. In February 2003, federal authorities arrested Turner and two others and seized more than five kilograms of cocaine as a result of a confidential informant's (CI-2) cooperation with federal and state law enforcement officials. Plea Agree. ¶ 5P. Smith knew that Turner had information about Smith's many federal offenses, including his drug trafficking and money laundering activities. *Id.* Smith told another confidential informant (CI-3) to tell Turner not to cooperate with the authorities and not to worry about his trial because Smith would have CI-2 killed. Plea Agree. ¶ 5Q. Smith provided CI-3 with more than $10,000 to pay Turner's legal expenses. *Id.* These facts provided the basis for the obstruction of justice charge in Count Eight of the Third Superseding Indictment.

After talking to CI-3, Smith met with Nathan Morgan to discuss killing CI-2, which Smith viewed as necessary to get rid of the case against Turner. Plea Agree. ¶ 5S.

> Smith told Morgan that if Morgan killed [CI-2], Smith would take care of Morgan if anything happened. Smith and Morgan scouted out some locations, including [CI-2's] church and house trying to locate [CI-2], [but] they did not actually harm CI-2 because Smith was arrested as a result of this investigation on March 31, 2003.

*Id.* These facts provided the basis for the solicitation of murder charge in Count Nine of the Third Superseding Indictment.

Although not included as part of the plea agreement, the presentence report (PSR) indicates that Smith was arrested in February 1993 for the homicide of an individual named Jeremy Allen. Witnesses identified Smith as Allen's shooter, but for some reason the homicide charge against Smith was dismissed. The plea agreement in this case, however, provided that Smith would "plead guilty to charges relating to the homicides of Jeremy Allen and Chris Gooch in [state court] if such are brought by the state by information or indictment." Plea Agree. ¶ 3. The United States, in turn,

> agree[d] the sentence in the instant [federal] case, except for the sentence on the 924(c) violation, will run concurrent to the sentences in any such state cases so long as the defendant fully complies with this agreement, including his obligation to provide full and truthful cooperation and testimony, and commits no further criminal offenses between the date of this plea agreement letter and his federal sentencing.

*Id.*

The plea agreement required Smith to "give complete, truthful, and accurate information and testimony" at "all times" and to refrain from committing or attempting to commit further crimes. Plea Agree. ¶ 18. The plea agreement also provided that the district court

> is neither a party to nor bound by this Plea Agreement and, after consideration of the Sentencing Guidelines, may impose the maximum penalties provided for the defendant's offenses, including a sentence of life imprisonment. Defendant further acknowledges that if the Court does not accept sentencing recommendations of the parties, defendant will have no right to withdraw his guilty plea.

Plea Agree. ¶ 24.

At Smith's plea hearing on March 14, 2005, the district court reminded Smith that the government's sentencing recommendations would not bind the court and further advised Smith that the court would make its own sentencing determinations. Smith indicated that he desired to plead

guilty nonetheless.  At the close of the hearing, the district court found that there was a factual basis

for the plea, that Smith had knowingly and voluntarily entered the plea, and that Smith had received

effective assistance from his counsel.  The district court set Smith's sentencing for June 2, 2005.

In the interim, however, Smith filed a *pro se* letter asking the district court to set aside his

guilty plea due to what he perceived to be ineffective assistance of counsel.  At the June 2005

hearing, the district court asked Smith why he thought the court should allow him to withdraw his

plea, and Smith responded that he had felt rushed to plead guilty.  The district court then asked Smith

what he objected to in the plea agreement:

| | |
|---|---|
| **The Defendant**: | I objected to the plea—really, what the main thing, I plead guilty to the Chris Gooch murder and the [Jeremy] Allen murder.  I felt like I really didn't give the order for DeShawn Sanderson to kill Chris Gooch.  I know I had a part of it, I paid for the lawyer and whatnot, but I felt like I really just didn't give him the order to kill Chris Gooch. |
| **The Court**: | Are you contending that you weren't—that at the time of your plea agreement that you told them you weren't involved in that? |
| . . . . | |
| **The Defendant**: | I think I told Mr. Koshy[, the prosecutor]—if I'm not mistaken, Your Honor, I think I told Mr. Koshy that DeShawn Sanderson told me that he was going to kill Chris Gooch, and I told him, yeah, do what you do.  But I didn't tell him like actually to go kill him.  And in the plea, it said like I ordered him to kill Deshawn, I mean kill Chris Gooch. |
| **The Court**: | What else? |
| **The Defendant**: | I felt like I wasn't guilty of the plea with telling Charles Turner not to cooperate with the government.  I paid for Charles Turner's lawyer, but I felt like I didn't tell him not to cooperate.  I object to Nathan Morgan, that's an objection instruction of justice [sic] charge, ordering him to kill [CI-2].  I felt like I'm not guilty on that.  But everything else in the thing I feel I am guilty of, and I will plead out to that. |

After the district court and the prosecutor questioned Smith further, the district court denied Smith's

motion. The district court explained that

> [g]iven the defendant's agreement to cooperate with the government in September
> [2004], given his proffers to the government on these charges in December 2004,
> given the formal agreement that he had with the government to plead guilty on
> February 22, 2005, and given that he did not file a motion to withdraw that plea until
> . . . more than a month later, the Court does not discern the circumstances and facts
> of this case to reflect that he hastily entered into this plea with an unsure heart and
> a confused mind.

The district court concluded that Smith's basic objective was to renegotiate his plea agreement; the

district court would not allow him to do so. Smith has not appealed the district court's denial of his

motion to withdraw his guilty plea.

The district court sentenced Smith on January 25, 2008. After ruling on Smith's written

objections to the PSR, the district court asked whether either party objected to the PSR's calculation,

using the 2003 Guidelines Manual, of Smith's Guidelines range. Hearing no objection, the district

court concluded that Smith had an offense level of 48—which included a three-level reduction based

on Smith's acceptance of responsibility—and a criminal history category of III, corresponding to a

Guidelines range of life imprisonment plus a consecutive sentence of five years' imprisonment for

the violation of 18 U.S.C. § 924(c).

At that point in the proceeding, the government proffered as Exhibit 1 a collection of

documents related to the Allen homicide. Exhibit 1-E consists of documents generated as part of

the state criminal proceedings against Smith, including Smith's petition to enter a plea of guilty to

second-degree murder, the state court's order accepting Smith's guilty plea, and the judgment. These

documents were admitted into evidence without objection. The state court judgment indicates that the state court sentenced Smith to thirty-five years' imprisonment for the Allen murder, that Smith will be eligible for release after serving 30% of his sentence, and that the state court left it for the federal court to decide whether the federal and state sentences should run concurrently or consecutively. After entering these exhibits into evidence, the government called a number of witnesses, the majority of whom were related to Chris Gooch and who testified pursuant to the Crime Victims' Rights Act.

Next, Smith read a prepared statement expressing his remorse and asking the forgiveness of the district court, the prosecutor, his victims' families, and his own family. Smith stated that he is "not a bad person, but a person that made bad choices, which bad choices led [him] to breaking the law." He also asserted that "[w]hen you don't know better, you can't do better," and then explained that now that he knows better he wants to take responsibility for his actions. Smith concluded by asking the district court for leniency and another opportunity to participate in society.

The government's argument emphasized Smith's involvement in the Allen and Gooch murders, Smith's plans to kill CI-2 in an effort to persuade Turner not to cooperate with the government, and Smith's responsibility for more than 1000 kilograms of cocaine. The prosecutor characterized Smith as "a kingpin" who "controlled an area through money, through flash and cash, and through brutality." The prosecutor also asserted that, although Smith had participated in proffer sessions with the government, the district court should give no weight to Smith's "cooperation" because Smith had been unreliable. The prosecutor explained that "if you are not truthful, if you are

not candid, if you don't accept responsibility for yourself, pointing the finger at others is worth nothing." In closing, the prosecutor asked the district court to impose a life sentence.

Smith's counsel argued, by contrast, that Smith's guilty plea was evidence of his acceptance of responsibility, that Smith "stand[s] by his plea agreement, everything that's in there," and that Smith's acceptance of responsibility was a mitigating factor. Smith's counsel asked for an outside-Guidelines sentence of twenty-five years' imprisonment, asserting that such a sentence would serve the goals of retribution, deterrence, incapacitation, and rehabilitation. Smith's counsel also asked the district court to recommend Smith for a drug treatment program. In addition, Smith's counsel emphasized that Smith had cooperated with the government, had provided "substantial assistance," and was willing to provide assistance in the future. The defense argument concluded with this exchange between Smith's counsel and the district court:

| | |
|---|---|
| **Mr. Buckholts**: | Your Honor, I'm sorry. I have forgotten one thing on this. And I apologize. |
| **The Court**: | That's all right. |
| **Mr. Buckholts**: | He also asks that his sentence run concurrent with his state sentence. I believe that might have been in his agreement. I know in the state court case it has that. |
| **The Court**: | They left it to this Court to determine whether it runs concurrent. |
| **Mr. Buckholts**: | Yes, and we're just asking that any sentence run concurrent. |

In rebuttal, the government argued that a sentence of twenty-five years' imprisonment would "create unwarranted sentencing disparity." The prosecutor did not address, however, whether Smith's federal sentence should run concurrently with his state sentence.

After the district court acknowledged that it had considered the facts set forth in the PSR, the testimony provided during the hearing, and Smith's personal and criminal history, the court sentenced Smith to life imprisonment plus a consecutive sentence of five years' imprisonment for the violation of 18 U.S.C. § 924(c). The district court explained its reasoning:

> From the Court's perspective, this is an extraordinary case that calls for an extraordinary sentence. The amount of cocaine and drugs involved in this case was, as represented, more than a ton. This was a continuing criminal enterprise characterized by violence. Two murders. And the Court does find, based upon the judgment in the state court case, that the defendant was guilty for the murder of Jeremy Allen.
> The Court also finds, based upon the statements admitted by the defendant in his plea letter, particularly at Pages Eight and Nine, that the defendant also is responsible for the murder of Chris Gooch.

The district court then ordered Smith to serve his federal sentence consecutively to his state sentence, providing this justification for the decision:

> The Court does so because of your responsibility for a drug enterprise that involve[d] more than a ton of drugs, caused the distribution of vast amounts of crack cocaine that was seriously injuring the community. And the Court has imposed this sentence to reflect the life that you took [from] Chris Gooch. It has made the state sentence consecutive to reflect that there was value to the 18[-]year[-]old life of Jeremy Allen. And it would not be appropriate for this Court to make that sentence concurrent, because to do so, I think, would not attach value to the life of Jeremy Allen.

Not long after the sentencing hearing, the government moved the district court for a factual finding that Smith had not fully complied with the plea agreement—in particular, "his obligation to provide full and truthful cooperation and testimony." The government cited, as an example, Smith's sworn testimony at the June 2005 plea withdrawal hearing to the effect that he felt he was not guilty of soliciting the murder of CI-2. At that point, Smith had already pled guilty to the solicitation

offense and had already agreed to the statement of facts in the plea agreement.  The government characterized this as "just one example of why the record demonstrates that the defendant did not fully comply with his plea agreement."

Smith did not file a response before the district court granted the government's motion.  In finding that Smith had "not compl[ied] with the plea agreement requiring his full and truthful cooperation and testimony," the district court relied "upon the facts set forth in th[e government's] motion, the terms of the Defendant's plea agreement, Defendant's motion to withdraw his plea and his statements in support of that motion."  The district court concluded that, as a result of his failure to comply with the plea agreement, Smith was "not entitled to any concurrent sentence."

Smith now appeals, arguing that the district court abused its discretion by sentencing him to life imprisonment and by ordering his federal sentence to run consecutively to his state sentence.

**II.**

The district court did not abuse its discretion in sentencing Smith to life imprisonment; thus Smith's life sentence is substantively reasonable.  Pursuant to the calculations in the PSR, the district court determined that Smith's offense level was 48 and his criminal history category was III.  Accordingly, the district court concluded that Smith's Guidelines range was life imprisonment plus a consecutive sentence of five years' imprisonment for the violation of 18 U.S.C. § 924(c).  Smith did not object to these calculations in the district court, nor does he challenge his Guidelines range on appeal.  Because the district court imposed a sentence within the properly calculated Guidelines range, we accord Smith's life sentence a presumption of reasonableness.  *See, e.g.*, *United States v.*

*Thompson*, 515 F.3d 556, 561 (6th Cir. 2008); *see also Rita v. United States*, 551 U.S. 338, 341, 347 (2007). Indeed, Smith had an offense level five levels higher, and a criminal history category two categories greater, than that for which the Guidelines recommend a sentence of life imprisonment rather than a range that merely includes life imprisonment as an outer limit.

Smith has not shown that a life sentence is unreasonable under the circumstances of this case. The § 3553(a) factors that a district court should consider when sentencing an offender include (1) the characteristics of the offense and the offender; (2) the need for a sentence that reflects the primary goals of criminal punishment, i.e., retribution, deterrence, incapacitation, and rehabilitation; (3) the sentencing options available; (4) the applicable Guidelines; (5) the relevant policy statements; and (6) the need to avoid unwarranted disparities in sentencing. 18 U.S.C. § 3553(a)(1)-(6).

Smith argues that the district court abused its discretion by placing too much emphasis on the goal of retribution and on the fact that he had not been fully cooperative and truthful. He contends that the district court should have placed greater weight on his personal characteristics, e.g., that his parents' divorce was difficult for him; that he has provided for his children financially; and that, if he were ever released, he would have a support system outside of prison. However, Smith's counsel did not advance any of these specific arguments during the sentencing hearing. Although Smith filed with the district court, more than two years before his sentencing, letters from friends and family to the effect that he is a good person who deserves leniency, Smith's counsel neither mentioned these letters in his sentencing memorandum nor relied upon these letters during the sentencing hearing. Smith did assert below, though, and he maintains on appeal, that a lesser

sentence would serve the goals of incapacitation, deterrence, and rehabilitation without being any harsher than necessary.

At bottom, Smith is asking this court to re-balance the relevant factors in order to arrive at a sentence other than life imprisonment. "This is simply beyond the scope of our appellate review, which looks to whether the sentence is reasonable, as opposed to whether in the first instance we would have imposed the same sentence." *United States v. Ely*, 468 F.3d 399, 404 (6th Cir. 2006). It was reasonable for the district court to place significant weight on the characteristics of Smith's multiple federal offenses and on the need for Smith's sentence to reflect the seriousness of those offenses, to provide just punishment, and to protect the public from further harm. The district court emphasized that this case involved more than one ton of cocaine and other drugs. The district court also remarked that "[t]his was a continuing criminal enterprise characterized by violence," including two murders. "Considering the deleterious effect that such conduct would naturally have on a community, it was not unreasonable for the district court to give less weight to [Smith's] personal characteristics." *United States v. Sexton*, 512 F.3d 326, 332 (6th Cir. 2008). The district court ultimately concluded that this was "an extraordinary case that call[ed] for an extraordinary sentence," implying that, from the court's perspective, a lesser sentence would not have been appropriate. It was not unreasonable for the district court to reach this conclusion.

Smith also challenges the district court's decision to run his federal sentence consecutively to, rather than concurrently with, his state sentence. Because the plea agreement did not bind the

district court in sentencing Smith, the district court retained—and permissibly exercised—the discretion to impose a consecutive sentence.

The plea agreement did not bind the district court in sentencing Smith because the plea agreement was of the type described in Federal Rule of Criminal Procedure 11(c)(1)(B). Rule 11(c)(1), which sets forth plea agreement procedures in federal court, provides that

> [i]f the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:
> (A) not bring, or will move to dismiss, other charges;
> (B) recommend, or agree not to oppose the defendant's request, that a particular sentence or sentencing range is appropriate or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request does not bind the court); or
> (C) agree that a specific sentence or sentencing range is the appropriate disposition of the case, or that a particular provision of the Sentencing Guidelines, or policy statement, or sentencing factor does or does not apply (such a recommendation or request binds the court once the court accepts the plea agreement).

The plea agreement in this case does not mention any of the subparts to Rule 11(c)(1). However, Smith's counsel and the government recognized at oral argument that Smith's plea agreement is of the kind described in subpart (B), i.e., consisting of nonbinding sentencing recommendations and requests. The language of the plea agreement itself supports this conclusion. Indeed, the plea agreement makes clear "that the Court is neither a party to nor bound by this Plea Agreement"; that the court "may impose the maximum penalties provided for [Smith]'s offenses, including a sentence of life imprisonment"; and that Smith "will have no right to withdraw his guilty plea" if the court rejects the parties' sentencing recommendations. Plea Agree. ¶ 24. The plea agreement further provides that "[a]ll parties understand that any recommendation by the government can in no way

bind the Court." Plea Agree. ¶ 28. Where a plea agreement included similar language, this court in *United States v. Elson*, 577 F.3d 713, 722 (6th Cir. 2009), held that the plea agreement did not bind the court in sentencing the defendant. Because Smith's plea agreement is of the kind described in subpart (B), the district court was not bound by the plea agreement's terms in sentencing Smith.[1]

As a result, the district court had the discretion, conferred by statute, to impose a consecutive, rather than a concurrent, sentence. And it does not appear that the district court abused this discretion. *See United States v. Watford*, 468 F.3d 891, 915 (6th Cir. 2006) (setting forth standard of review). Pursuant to 18 U.S.C. § 3584(a), if a district court imposes a term of imprisonment "on a defendant who is already subject to an undischarged term of imprisonment, the terms may run concurrently or consecutively." Section 3584(b) provides that in making this determination, a district court must consider the § 3553(a) factors. The district court in this case, in imposing a consecutive sentence, considered the characteristics of Smith's many federal offenses, 18 U.S.C. § 3553(a)(1), emphasizing Smith's "responsibility for a drug enterprise that involve[d] more than a ton of drugs, [and] caused the distribution of vast amounts of crack cocaine that was seriously

---

[1]In the part of the plea agreement that specifically addresses the relationship between the federal sentence and any state sentence, the government "*agrees* the sentence in the instant case . . . will run concurrent to the sentences in any . . . state cases so long as [Smith] fully complies with this agreement." Plea Agree. ¶ 3 (emphasis added). This language could be read as a binding sentencing recommendation, made pursuant to Rule 11(c)(1)(C). Indeed, this court recently stated that "[w]here the parties *agree* that a particular sentence is appropriate, the court is bound by that agreed-upon disposition." *Elson*, 577 F.3d at 722 (emphasis added).

At oral argument, the government asserted that, in keeping with the plea agreement's otherwise non-binding nature, the above-quoted provision should say that the government "agrees to recommend" a concurrent sentence. The government should certainly draft its plea agreements more carefully in the future.

injuring the community." This statement suggests that the district court also considered the need "to

protect the public from further crimes of th[is] defendant." *Id.* § 3553(a)(2)(C). In addition, the

district court considered the need for the federal sentence both "to reflect the seriousness" of Smith's

offenses and "to provide just punishment," *id.* § 3553(a)(2)(A), as evidenced by the district court's

express recognition that Chris Gooch's life had value, as did Jeremy Allen's. Indeed, the district

court explained that to impose a federal sentence concurrent with the state sentence "would not be

appropriate," because it "would not attach value to the life of Jeremy Allen." Moreover, the district

court's assertion that the state court had left it for the district court to decide whether the federal and

state sentences should run concurrently suggests that the district court was aware of "the kinds of

sentences available," *id.* § 3553(a)(3).[2]

---

[2]Pursuant to 18 U.S.C. § 3553(a)(4)-(5), the district court also should have considered the Guidelines and any relevant policy statements, but it is not clear that the district court did so. The Guidelines include a policy statement that a district court may order "the sentence for the instant offense . . . to run concurrently, partially concurrently, or consecutively to [a] prior undischarged term of imprisonment to achieve a reasonable punishment for the instant offense." U.S.S.G. § 5G1.3(c). Application Note 3(A) provides further guidance by instructing a district court to consider the following factors in addition to the § 3553(a) factors: "[t]he type (e.g., determinate, indeterminate/parolable) and length of the prior undischarged sentence"; "[t]he time served on the undischarged sentence and the time likely to be served before release"; "[t]he fact that the prior undischarged sentence may have been imposed in state court rather than federal court"; and "[a]ny other circumstance relevant to the determination of an appropriate sentence for the instant offense." U.S.S.G. § 5G1.3 cmt. n.3(A)(i)-(v).

Neither the district court nor the PSR expressly mentioned these additional factors or, for that matter, U.S.S.G. § 5G1.3; however, Smith does not contend that the district court abused its discretion by failing to give explicit consideration to U.S.S.G. § 5G1.3 or Application Note 3(A). At any rate, the district court was likely aware of the facts it should have considered pursuant to Application Note 3(A). *See United States v. Berry*, 565 F.3d 332, 343 (6th Cir. 2009) ("[I]t is clear from the sentencing colloquy and the PSR that the district court understood the type and length of [the defendant]'s state sentence and its indeterminate nature, as well as the separate nature of the

Smith argues that the district court gave too much weight to retribution and not enough weight to deterrence, incapacitation, or rehabilitation in imposing the consecutive sentence. However, it appears that the district court did weigh the goal of incapacitation by considering the need to protect the public from further crimes by Smith. Moreover, Smith has not explained how weighing deterrence more heavily would have led to a concurrent rather than a consecutive sentence. Nor is it clear how placing greater weight on rehabilitation would have changed the outcome. In any event, a district court "does not abuse its discretion when it 'makes generally clear the rationale under which it has imposed the consecutive sentence and seeks to ensure an appropriate incremental penalty for the instant offense.'" *United States v. Berry*, 565 F.3d 332, 342 (6th Cir. 2009) (quoting *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998)); *see Watford*, 468 F.3d at 916-17. Because the district court satisfied these criteria, we cannot conclude that the district court abused its discretion.

Even if the district court were bound by the plea agreement's sentencing provisions, the plea agreement provides for a concurrent sentence only "so long as [Smith] fully complies with this agreement, including his obligation to provide full and truthful cooperation and testimony." Plea Agree. ¶ 3. Following Smith's sentencing, the government moved the district court for an explicit factual finding that Smith had not fully complied with the plea agreement. The district court concluded that, based on Smith's motion to withdraw his guilty plea and the statements Smith had made in support of that motion, Smith had not provided full and truthful cooperation and testimony

---

state and federal offenses.")

and was thus not entitled to a concurrent sentence. The district court's decision to impose a consecutive sentence was therefore consistent with the plain terms of the plea agreement. Smith does not clearly challenge the district court's factual finding on appeal. Indeed, he appears to concede "that he technically breached his plea agreement by filing a *pro se* request to change his plea." Smith's Br. 21. "[N]or does [Smith] dispute that some of his statements were evasive regarding his role in the death of Chris Gooch." *Id.*

Contrary to Smith's argument on appeal, the district court never purported to find that he had materially or substantially breached his plea agreement. Smith relies upon a Fifth Circuit case, *United States v. Castaneda*, 162 F.3d 832 (5th Cir. 1998), as support for his argument. *Castaneda* is different: in *Castaneda*, the defendant appealed the district court's denial of his motion to dismiss an indictment after the government had unilaterally released itself from its obligations under a nonprosecution agreement with the defendant. *Id.* at 834-35. Applying general principles of contract law, the Fifth Circuit held that the government was obligated to perform under the nonprosecution agreement unless the government could prove to the court by a preponderance of the evidence that the defendant had materially breached the agreement. *Id.* at 835-36. By contrast, here, the government made no effort to withdraw from or set aside the plea agreement. (Smith appears to concede as much in his reply brief.) And, again, the district court never purported to find that Smith had materially breached the plea agreement. Rather, the district court found that, because Smith had not provided full and truthful cooperation and testimony, he was not entitled to a concurrent sentence. This finding conformed with the terms of the plea agreement, which required Smith's full

compliance—not just his substantial compliance—before the government would agree to a concurrent sentence. Plea Agree. ¶ 3.

**AFFIRMED.**