**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0246n.06

**No. 12-6582**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Apr 01, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES OF AMERICA,  )
  )
    Plaintiff-Appellee,  )  ON APPEAL FROM THE
  )  UNITED STATES DISTRICT
    v.  )  COURT FOR THE WESTERN
  )  DISTRICT OF TENNESSEE
KARLOS LOVE,  )
  )
    Defendant-Appellant.  )
  )

BEFORE: BOGGS and ROGERS, Circuit Judges; and STEEH, District Judge.[*]

ROGERS, Circuit Judge. Karlos Love appeals the district court's denial of his motion to suppress marijuana and a handgun found during a traffic stop and narcotics seized in a subsequent search of his residence. Love's arguments on appeal essentially amount to challenges to the lower court's credibility determinations. Because the district court's factual determinations were not clearly erroneous, the district court properly denied Love's motion to suppress.

The Memphis Police Department received a tip indicating that two men—Love and Demond Eddings—were selling drugs from a residence located at 949 Biggs Street in Memphis. The tipster described the physical appearance of both men and Love's blue Chrysler PT Cruiser.

After receiving the complaint, officers began watching the residence. Officer Trey Norris observed a pattern where "an unusual number of cars arrive[d] at the residence where visitors would

---

[*] The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

pull up, be met by . . . Love, stay approximately four to five minutes, and then leave." According to Norris, this pattern of activity is consistent with the sale of drugs. The officers saw Love leave the residence in the PT Cruiser on multiple occasions, apparently to sell drugs.

Immediately before Love's arrest, officers watched him leave the residence with what resembled a large potato chip bag. Officer Norris then saw Love get into his car without buckling his seatbelt. Officer Norris and his partner, Officer Jerry Graves, began following Love in an unmarked car. As they tailed Love, Officer Norris saw Love turn right three times without using his turn signal, but did not recall whether Love ever turned left without signaling. Officer Graves did not remember whether Love used his turn signals or not.

Officer Norris called Officer Algeron Brown and asked him to conduct a traffic stop. Officer Brown then saw Love turn left without signaling. Officer Brown pulled alongside Love's car and could see through the PT Cruiser's partially rolled-down window that Love did not have his seatbelt buckled. After seeing these traffic violations, Officer Brown pulled Love over. As Brown approached Love's car, Brown smelled marijuana. After he asked Love to step out of the car, Brown saw a bag of what appeared to be marijuana partially lodged under the driver's seat. Brown then patted down Love and discovered a handgun in his waistband. Brown arrested Love and put him in the back of his squad car. He then called for a K9 unit, which conducted a sweep of Love's car and alerted to the presence of drugs. Officer Brown then searched the car and found approximately two pounds of marijuana.

Meanwhile, Officers Norris and Graves headed back to the residence. When the officers arrived, they saw Eddings leaving 949 Biggs Street. When Eddings saw the approaching officers,

he immediately tried to swallow a large bag of marijuana. The officers ordered him to spit out the bag and arrested him after he complied. The officers then conducted a protective sweep of the house to make sure that no one else was in the building and that evidence was not being destroyed. During the sweep, they observed several bags of marijuana in plain view. After confirming that no one else was in the building, Officer Graves left to obtain a warrant. He filed an affidavit describing the initial tip, the surveillance of the house, Love's arrest, Eddings' attempt to swallow the marijuana, and the drugs observed during the protective sweep. The magistrate issued the warrant, and the officers returned to 949 Biggs. They searched the house and found the drugs they had initially observed during the protective sweep, other previously undiscovered narcotics, scales, and other drug paraphernalia.

A grand jury indicted Love on three charges: being a felon in possession of a firearm, possession of a firearm in furtherance of a felony, and possession of marijuana with intent to distribute. Love moved to suppress the gun and marijuana that Officer Brown found during the traffic stop and the drugs discovered at the residence on Fourth Amendment grounds. A magistrate judge conducted an oral hearing. At the hearing, the officers testified to the facts described above. Love also took the stand and testified that he had not committed any traffic violations. The magistrate judge found the officers' testimony credible and recommended denying the motion. The district court adopted the magistrate judge's report and recommendation with modifications and rejected Love's various factual objections. After losing the suppression motion, Love pled guilty to being a felon in possession of a firearm and possession of marijuana with intent to distribute.

Love reserved the right to appeal the district court's denial of his motion to suppress and now challenges that ruling.

The district court did not err in denying Love's motion to suppress the handgun and marijuana found during the traffic stop. Love argues that the traffic stop violated the Fourth Amendment and so therefore all of the subsequently discovered evidence—the handgun, the potato chip bag filled with marijuana, and the drugs seized at 949 Biggs Street—must be excluded as fruit of the poisonous tree. This argument is meritless. A traffic stop is reasonable, and therefore does not violate the Fourth Amendment, when an officer has probable cause to believe that a traffic violation has occurred. *United States v. Blair*, 524 F.3d 740, 748 (6th Cir. 2008). This is true even when the stop is "a pretext to fish for evidence of other crimes." *United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010).

Love claims that he never committed a traffic violation and thus the stop was illegal. Accepting that argument would require this court to overturn several of the district court's findings of fact. This court reviews a district court's findings of facts for clear error. Disturbing a district court's factual finding is proper "when, although there may be evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Blair*, 524 F.3d at 747.

In an attempt to show that the district court's finding that Love was driving without a seatbelt was clearly erroneous, Love points to several supposedly contradictory statements made by the officers at the suppression hearing. Love first argues that the officers' testimony contradicts his own testimony that he had in fact been wearing his seatbelt. This argument fails because the district court

believed the officers and not Love; it generally is not this court's place to reconsider "findings of fact anchored in credibility assessments." *United States v. Hudson*, 405 F.3d 425, 442 (6th Cir. 2005) (internal alterations omitted). Love next argues that Norris and Graves did not know whether Love's PT Cruiser had tinted windows and that the officers testified inconsistently about how far from the Biggs Street house they had been positioned while conducting the surveillance. Again, these arguments go to the credibility of the officers' testimony; the district court's decision to credit the officers' version over Love's is supported by Officer Brown's testimony that he saw Love driving without a seatbelt when Brown pulled alongside Love's car. Love's final argument—that the sun had set by the time of the arrest and therefore it was too dark for the officers to see whether or not Love's seatbelt was unbuckled—is contradicted by Brown's testimony that he could see Love driving without the seatbelt through the partially rolled-down window of the PT Cruiser and all of the officers' testimony that there was ample light at the time the arrest occurred. None of these arguments leaves us with a firm conviction that a mistake was made.

The district court's finding that Love turned without signaling was also not clearly erroneous. Love attempts to discredit the officers' testimony by pointing to the fact that Officer Norris never saw Love turn left without signaling while Officer Brown did, that Officer Graves never saw Love fail to signal, and that the officers were following from several cars back and thus would have had difficulty seeing whether Love was signaling or not. These arguments may well have cast doubt on the officers' side of the story, but apparently not enough doubt for the district court to credit Love's version over the Government's. This court generally does not second guess credibility assessments

on appeal. Two different officers said that they saw Love fail to turn without signaling. Accepting their side of the story was not clear error.

Since the officers observed Love committing two separate traffic violations, they had the legal authority to stop his vehicle. Love argues that his failure to signal while turning did not constitute a violation because Tennessee law requires signaling only when "the operation of any other vehicle may be affected" by the turn and that no vehicles were close to him. Tenn. Code Ann. § 55-8-143. This argument is not persuasive because the officers were following behind Love in unmarked vehicles. In any event, it is undisputed that failing to wear a seatbelt is a traffic violation. *Id.* § 55-9-603. Thus the officers observed Love committing traffic violations. And since police officers have the authority to stop an individual when they see a traffic violation being committed, *United States v. Street*, 614 F.3d 228, 232 (6th Cir. 2010), Officer Brown did not violate the Fourth Amendment when he pulled Love over.[1]

Finally, the district court did not err in denying Love's motion to suppress the evidence obtained during the search of 949 Biggs Street because the information in the warrant affidavit established probable cause that evidence of drug crimes would be found at 949 Biggs Street. The Government conceded that the initial protective sweep of the residence was constitutionally suspect. After the initial protective sweep, the officers obtained a warrant. But the application for the warrant referred to the drugs the officers observed during the protective sweep. Thus the warrant on which the subsequent search was based contained illegally obtained evidence. In such cases,

---

[1]Because Officer Brown had the authority to stop Love because of the traffic violations, we need not address whether the stop was independently justifiable under *Terry v. Ohio*, 392 U.S. 1 (1968).

> it is well-settled that: when a search warrant is based partially on tainted evidence and partially on evidence arising from independent sources, if the lawfully obtained information amounts to probable cause and would have justified issuance of the warrant apart from the tainted information, the evidence seized pursuant to the warrant is admitted.

*United States v. Smith*, 730 F.2d 1052, 1056 (6th Cir. 1984) (internal quotation marks omitted).

The affidavit without the reference to the protective sweep amply supported probable cause. An affidavit establishes probable cause when, "given all the circumstances set forth in the affidavit, . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place." *United States v. Berry*, 565 F.3d 332, 338 (6th Cir. 2009). Excluding the protective sweep, the affidavit included the initial complaint of drug activity at 949 Biggs Street, the officers' observation of a pattern of vehicle traffic consistent with drug sales, the actions of Love and Eddings in leaving the property on several occasions (also consistent with drug sales), Love's arrest and the drugs thereupon discovered in his vehicle, and Eddings' attempt to eat a large bag of marijuana when he saw the officers approaching. This evidence was easily sufficient to establish probable cause that the officers would discover additional drugs in the residence. Thus the district court did not err in denying the motion to suppress the evidence discovered at the residence.

Therefore we uphold the district court's denial of Love's motion to suppress and AFFIRM the district court's judgment. Love has made several pro se motions before this court, including a motion to submit an additional brief. We have read the motions and Love's brief and DENY those motions.