*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 12a0416p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee*,

          *v.*
                                        Nos. 11-4081/4082

KENNETH KEVIN COCHRANE,
                    *Defendant-Appellant*.

Appeal from the United States District Court
for the Northern District of Ohio at Youngstown.
Nos. 4:08-cr-410-1; 4:11-cr-132-1—Donald C. Nugent, District Judge.

Argued: November 27, 2012

Decided and Filed:  December 20, 2012

Before:  CLAY and STRANCH, Circuit Judges; BELL, District Judge.[*]

_____

**COUNSEL**

**ARGUED:** John R. Broderick, James Lewis Woolard, Jr., UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, for Appellant.  Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.  **ON BRIEF:** John R. Broderick, James Lewis Woolard, Jr., UNIVERSITY OF MICHIGAN LAW SCHOOL FEDERAL APPELLATE LITIGATION CLINIC, Ann Arbor, Michigan, Melissa M. Salinas, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Toledo, Ohio, for Appellant.  Laura McMullen Ford, UNITED STATES ATTORNEY'S OFFICE, Cleveland, Ohio, for Appellee.

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District of Michigan, sitting by designation.

---

**OPINION**

---

CLAY, Circuit Judge.    Defendant Kenneth K. Cochrane Jr. appeals his conviction and sentence for one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g), as well as the consecutive sentence imposed for violating the terms of his supervised release.  Defendant argues that police violated the Fourth Amendment by unreasonably prolonging a traffic stop and conducting a search of his vehicle without voluntary consent.  Defendant further asserts that his sentence is procedurally unreasonable because the district court failed to clearly articulate a rationale for imposing consecutive sentences.  For the reasons that follow, we **AFFIRM** Defendant's conviction but **VACATE** his sentence and **REMAND** for resentencing.

**BACKGROUND**

While on routine patrol on February 4, 2011, four members of the Violent Gun Reduction Interdiction Program ("VGRIP"), a task force that focuses on drug and gun crime in and around Youngstown, Ohio, stopped Defendant's SUV for a purported stop-sign violation.  After a police dog alerted to the presence of narcotics in the vehicle, the officers searched it but turned up no evidence of drugs.  Defendant was given a warning about the stop-sign violation and sent on his way.

Approximately five weeks later, on March 15, 2011, the same officers—three Youngstown police officers and one federal agent from the Bureau of Alcohol, Tobacco, Firearms, and Explosives, again on routine patrol in an unmarked car—observed Defendant driving his vehicle. One of the officers noticed that Defendant's SUV did not have a license plate on the front of the vehicle, as required by Ohio law.  Without activating their lights or siren, the officers followed Defendant to the parking lot of an apartment complex where Defendant's fiancé and two children were known to reside.

Defendant had already parked his SUV, exited, and had begun walking toward the apartment building when the officers pulled up behind the SUV.  As the officers

arrived, they turned on their lights to initiate a traffic stop. The officers quickly ordered Defendant to turn around and return to his vehicle. Defendant casually walked back to his vehicle, and the officers could see that he was not carrying any weapons. Defendant met Youngstown Police Lieutenant Kevin Mercer near the rear driver's side of Defendant's SUV and, according to Mercer, had "a brief, couple sentence conversation." (R. 25, Suppression Hrg. Tr. 15–16.) Mercer testified that he asked what Defendant was doing. Defendant asked why he was stopped, and Mercer responded that he did not have a front license plate. Mercer then asked Defendant if he had any drugs or guns in the vehicle, a question which he routinely asks during traffic stops, and Defendant responded that he did not. Mercer then said, "You know we're gonna want to look." (*Id.* at 27.) Mercer testified that Defendant then said "go ahead," but Defendant denies making this statement.

Having been told to "go ahead" and search the vehicle, Mercer informed the other officers that Defendant had consented to the search. One of the officers opened the front passenger door and, approximately "five or ten seconds" into the search, noticed the end of a silver gun barrel protruding from behind the center console. Defendant was then placed under arrest for improper handling of a firearm in a vehicle, read his *Miranda* rights, and placed in the back of the officers' patrol car. When he was in the backseat of the police cruiser, one of the officers asked for Defendant's driver's license, ran the license, and checked the SUV's registration. The record is unclear as to when Defendant received a traffic citation—whether at the scene, later that day at the police station, or (as he claims) three days later—but a citation was ultimately issued.

On April 6, 2011, Defendant was indicted on one count of being a felon in possession of a firearm. Defendant had previously been convicted of bank fraud, for which he was serving a term of supervised release at the time of his firearms conviction. Defendant moved to suppress the firearm, arguing that it was obtained as a result of an unconstitutional traffic stop and subsequent search without his consent. The district court denied the motion, and a jury convicted Defendant of the sole count in the indictment.

Defendant's firearms conviction constituted an automatic violation of the terms of his supervised release.  Therefore, the district court imposed sentences for both the firearms conviction and the supervised release violation.  At the sentencing hearing, Defendant's counsel requested that the two sentences run concurrently.  The extent of the district court's discussion of the issue is as follows:

> [W]hat I'm going to do in the case that we're in trial on [the firearms conviction], is place you in the custody of the Bureau of Prisons to be imprisoned fear [sic] a term of 41 months, $100 special assessment, to be followed by three years of supervised release.  And on the violation [of supervised release], I'm going to place you in the custody of the Bureau of Prisons for 12 months to be served consecutive to the sentence in this case, and with the three years of supervised release to run concurrent with the three years of supervised release in the trial.

(No. 4:08-cr-00410-1, R. 21, Sentencing Hrg. Tr. 22.)  Defendant timely appealed his conviction and both sentences.

## DISCUSSION

### I.     Suppression of the Firearm

"When reviewing a district court's decision on a motion to suppress, we use a mixed standard of review: we review findings of fact for clear error and conclusions of law *de novo*."  *United States v. See*, 574 F.3d 309, 313 (6th Cir. 2009).  In particular, "[w]hether a seizure is reasonable under the Fourth Amendment is a question of law that we review de novo." *United States v. Evans*, 581 F.3d 333, 340 (6th Cir. 2009).  "When a district court has denied a motion to suppress, this Court reviews the evidence in the light most likely to support the district court's decision."  *United States v. Adams*, 583 F.3d 457, 463 (6th Cir. 2009) (internal quotation marks omitted).

#### A.     The Traffic Stop

"Stopping and detaining a motorist constitutes a seizure within the meaning of the Fourth Amendment."  *United States v. Bell*, 555 F.3d 535, 539 (6th Cir. 2009) (internal quotation marks omitted).  Under *Terry v. Ohio*, 392 U.S. 1 (1968), this Court must determine whether the stop was "justified at its inception," and then "whether it

was reasonably related in scope to the circumstances which justified the interference in the first place." *Id.* at 19–20.  Defendant does not dispute that the initial stop was justified; he admits that his vehicle lacked a front license plate in contravention of Ohio law.  He argues, however, that the scope of the officers' conduct was not reasonably related to his violation of the traffic laws.

A valid *Terry* stop must be "limited in scope and duration." *Florida v. Royer*, 460 U.S. 491, 500 (1983); *see also United States v. Everett*, 601 F.3d 484, 488 (6th Cir. 2010).  To be limited in scope, "the investigative methods employed should be the least intrusive means reasonably available to verify or dispel the officer's suspicion in a short period of time." *Royer*, 460 U.S. at 500.  To be limited in duration, "an investigative detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." *Id.*

During a valid traffic stop, police officers may ask extraneous questions unrelated to the purposes of the stop, "so long as those inquiries do not measurably extend the duration of the stop." *Arizona v. Johnson*, 555 U.S. 323, 333 (2009) (citing *Muehler v. Mena*, 544 U.S. 93, 100–01 (2005)).  Applying *Muehler* and *Johnson*, we have declined to impose "a categorical ban on suspicionless unrelated questioning that may minimally prolong a traffic stop." *Everett*, 601 F.3d at 492.  Instead, we concluded that a reviewing court "must conduct a fact-bound, context-dependent inquiry in each case" to determine whether the "'totality of the circumstances surrounding the stop' indicates that the duration of *the stop as a whole*—including any prolongation due to suspicionless unrelated questioning—was reasonable." *Id.* at 493–94 (quoting *United States v. Turvin*, 517 F.3d 1097, 1101 (9th Cir. 2008)).

The key to this inquiry is "whether the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly." *Id.* at 494 (quoting *United States v. Sharpe*, 470 U.S. 675, 686 (1985)).  "[T]he overarching consideration is the officer's diligence—i.e., his persevering or devoted . . . application to accomplish [the] undertaking of ascertaining whether the suspected traffic violation occurred, and, if necessary, issuing a ticket." *Id.* (internal quotation marks and emphasis

omitted); *see also United States v. Digiovanni*, 650 F.3d 498, 507 (4th Cir. 2011) ("In the context of traffic stops, police diligence involves requesting a driver's license and vehicle registration, running a computer check, and issuing a ticket.").

For example, we will find an impermissible lack of diligence when "the totality of the circumstances, viewed objectively, establishes that the officer, without reasonable suspicion, definitively abandoned the prosecution of the traffic stop and embarked on another sustained course of investigation." *Everett*, 601 F.3d at 495. Defendant argues that the officers definitively abandoned the traffic stop, thereby unreasonably prolonging the stop in violation of the Fourth Amendment. However, neither the duration nor the subject matter of the officers' questioning indicates that they were not diligently pursuing the traffic stop.

First, the extraneous questioning of Defendant was extremely brief. Mercer testified at the suppression hearing that his conversation with Defendant near the rear bumper of the SUV was "just a brief, couple sentence conversation." After Defendant told Mercer to "go ahead" with the search of the vehicle, the officers searched for "maybe five or ten seconds" before they discovered a gun in the vehicle. The duration of the officer's questioning in this case was similar to that in *Everett*, and we held there that the several extra seconds of delay caused by the questioning did not impermissibly extend the length of the stop. *See Everett*, 601 F.3d at 495; *see also United States v. Chaney*, 584 F.3d 20, 26 (1st Cir. 2009) (finding that a "delay of approximately two minutes" prior to an officer developing reasonable suspicion "did not unreasonably extend the duration of the traffic stop"); *United States v. Olivera-Mendez*, 484 F.3d 505, 511 (8th Cir. 2007) (finding that "three brief questions" that extended the stop by "twenty-five seconds" did not constitute an unreasonable seizure).

Nor does the scope of the officers' questioning reveal a lack of diligence. The safety of officers during traffic stops is a "legitimate and weighty" interest. *Pennsylvania v. Mimms*, 434 U.S. 106, 110 (1977). "Questions directed toward officer safety . . . do not bespeak a lack of diligence." *Everett*, 601 F.3d at 495. Although Mercer also asked if Defendant had drugs—a question which would not be justified by

the interest in officer safety—the minuscule additional delay does not amount to a lack of diligence. *See id*. at 495. Neither the slight prolongation of the traffic stop, nor the limited excursion from the proper scope of the stop, viewed in light of the totality of the circumstances, provides a reason to find that the officers "definitively abandoned the prosecution of the traffic stop and embarked on another sustained course of investigation." *See id*.

We share Defendant's concern that police officers will use traffic stops merely to cover up suspicionless investigations into drugs or weapons. *See United States v. Stepp*, 680 F.3d 651, 662 (6th Cir. 2012) (recognizing that a "crafty officer" may delay pursuing the initial traffic violation until "she has satisfied herself that all of her hunches were unfounded"). Accordingly, we will not hesitate to apply the rules established by *Terry* and its progeny, including *Everett*, when the scope and duration of such an investigation is unreasonable. *See, e.g.*, *id.* at 662–63 (finding that six minutes of extraneous questioning constituted an unreasonable seizure). However, the scope and duration of the officers' questioning in this case were not unreasonable. To the extent that Defendant objects to the fact that the officers asked for his driver's license and registration only after asking about the presence of contraband, we find no rule that officers must ask questions in a certain order when the totality of the circumstances indicates that the scope and duration of the stop were reasonable. *See Everett*, 601 F.3d at 493–94 ("[T]he touchstone of any Fourth Amendment analysis is reasonableness."). Under these circumstances, we find that the officer's extraneous questioning did not constitute an unreasonable seizure.

## B.     Consent to Search

Defendant next argues that even if the traffic stop was not unreasonably prolonged, he did not voluntarily consent to the search of his vehicle. The question of whether consent to search was freely and voluntarily given "is a question of fact to be determined from the totality of the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). To be valid, consent must be "unequivocally, specifically, and intelligently given, uncontaminated by any duress or coercion." *United States v. Worley*,

193 F.3d 380, 386 (6th Cir. 1999) (internal quotation marks omitted).  Because it is a question of fact, this Court reviews the district court's finding of free and voluntary consent for clear error.  *United States v. Carter*, 378 F.3d 584, 587 (6th Cir. 2004) (en banc).

Consent to search is a well-established exception to the Fourth Amendment's warrant requirement.  *See Davis v. United States*, 328 U.S. 582, 593–94 (1946).  "The government bears the burden of proving, through 'clear and positive testimony' that the consent to search was given voluntarily."  *United States v. Beauchamp*, 659 F.3d 560, 570 (6th Cir. 2011) (quoting *United States v. Salvo*, 133 F.3d 943, 953 (6th Cir. 1998)).  Courts should consider several factors when evaluating whether consent was voluntary, including: the age, intelligence, and education of the suspect; whether the suspect understands the right to refuse consent, *id.* at 572; the length and nature of the detention; the use of coercive or punishing conduct by the police, *Bustamonte*, 412 U.S. at 226; and indications of "more subtle forms of coercion that might flaw [the suspect's] judgment," *United States v. Watson*, 423 U.S. 411, 424 (1976).

At the suppression hearing, Mercer testified that he stated to Defendant in reference to the vehicle, "You know we're gonna want to look."  Mercer testified that Defendant then stated, "Go ahead."  On appeal, Defendant maintains that he never made this statement, but argues that if it was made, it was not voluntary.  He makes three arguments that the statement was not voluntary: first, the district court should have considered the February stop when evaluating the voluntariness of Defendant's consent; second, the statement merely signaled acquiescence to police authority, not voluntary consent; and third, the statement was coerced.

First, the allegedly illegal search that occurred on February 4, 2011, does not render involuntary Defendant's statement on March 15, 2011.  While a "suspect's knowledge of a prior illegal search can . . . give rise to a sense of futility," such that his spoken consent should be considered involuntary, *United States v. Haynes*, 301 F.3d 669, 683 (6th Cir. 2002), it is best considered as part of the totality of the circumstances surrounding the search.  Prior illegal searches are relevant, not in the abstract, but in

determining whether the suspect believed in the moment that refusal to consent would be futile.  In previous cases where we have determined that consent was not voluntary because of a prior illegal search, the prior search was part of the same series of events that culminated in the consent to search. *See id.* at 683–84; *Beauchamp*, 659 F.3d at 572.  We are aware of no cases in which consent was found to be involuntary because of an allegedly illegal search that occurred over a month before the consent was given.

Second, Defendant argues that he merely acquiesced to the officers' authority rather than affirmatively consented.  "[A] search based on consent requires more than mere expression of approval to the search." *United States v. Canipe*, 569 F.3d 597, 603 (6th Cir. 2009) (citation omitted); *see also Worley*, 193 F.3d at 386 (finding that when a suspect responded to a request to search with the phrase "[Y]ou've got the badge, I guess you can," the suspect was merely expressing futility and acquiescence, rather than consent).  Defendant did state that he walked back toward his car "to respect them [the officers] because they're law officials, and I have to respect what they say, you know, once I encounter them."  (R. 25, Suppression Hrg. Tr. 76.)  But unlike in *Worley*, Defendant did not testify that he believed he was powerless to refuse the officers' request to search. *See Worley*, 193 F.3d at 383.  Nor did his statement to the police indicate mere acquiescence.  On the contrary, Defendant clearly conveyed his consent to the search by saying "go ahead." *See, e.g.*, *United States v. McCauley*, 548 F.3d 440, 447 (6th Cir. 2008) (finding that the statements "go ahead and search," "take a look," "you can go ahead and check," or "help yourself" were each sufficient to convey voluntary consent).

Defendant finally asserts that the officers' conduct was coercive, thus rendering his consent invalid. *See Worley*, 193 F.3d at 386 (consent must be "uncontaminated by any duress or coercion").  Defendant argues that the circumstances of the stop, including the number of officers and the fact that they arrived suddenly and were shouting at him, indicate that the atmosphere was coercive.  However, the officers did not threaten or promise anything to Defendant; they had not yet arrested him or threatened to arrest him; and there is no evidence that the officers physically threatened Defendant or intimidated

him.  Under these circumstances, Defendant's consent was not tainted by coercion, and his consent was therefore voluntary.

## II.     Reasonableness of the Sentence

We review a district court's sentencing determination for reasonableness under a deferential abuse of discretion standard.  *United States v. Bolds*, 511 F.3d 568, 578 (6th Cir. 2007) (citing *Gall v. United States*, 552 U.S. 38, 46 (2007)).  This reasonableness review "has two components: procedural and substantive."  *Id.* "Consequently, our reasonableness review requires inquiry into both the length of the sentence and the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."  *United States v. Herrera–Zuniga*, 571 F.3d 568, 581 (6th Cir. 2009) (internal quotation marks omitted).  As we held in *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "district courts are required, after announcing sentence, to ask the parties whether they have any objections to the sentence . . . that have not previously been raised."  *See Herrera–Zuniga*, 571 F.3d at 578 (internal quotation marks omitted).  The district court in this case failed to ask the so-called "*Bostic* question," and Defendant was therefore not required to raise any procedural objections in order to preserve them for appeal.  Accordingly, we review Defendant's sentence for abuse of discretion.  *Id.* at 581.

### A.     Length of Defendant's Terms of Imprisonment

We first examine Defendant's prison sentences for procedural and substantive reasonableness.  Procedural reasonableness review "begins with a robust review of the factors evaluated and the procedures employed by the district court in reaching its sentencing determination."  *Bolds*, 511 F.3d at 578 (internal quotation marks omitted).  Specifically, we must ensure that the district court:

> (1) properly calculated the applicable advisory Guidelines range;
> (2) considered the other § 3553(a) factors as well as the parties' arguments for a sentence outside the Guidelines range; and (3) adequately articulated its reasoning for imposing the particular sentence chosen, including any rejection of the parties' arguments for an

outside-Guidelines sentence and any decision to deviate from the advisory Guidelines range.

*Id.* at 581.  In reviewing the district court's application of the § 3553(a) factors, "there is no requirement . . . that the district court engage in a ritualistic incantation to establish consideration of a legal issue," or that it "make specific findings related to each of the factors considered."  *Id.* at 580 (internal quotation marks omitted).  However, in order for a sentence to be procedurally reasonable, "the record must contain the district court's rationale for concluding that the 'sentence imposed is sufficient but not greater than necessary, to comply with the purposes' of sentencing set forth in 18 U.S.C. § 3553(a)."  *Id.*  The district court must provide an "articulation of the reasons [why it] reached the sentence ultimately imposed."  *United States v. Jackson*, 408 F.3d 301, 305 (6th Cir. 2005).

Defendant received a within Guidelines sentence of 41 months in prison for his firearms conviction and 12 months in prison for his supervised release violation.  The district court's stated rationale for these sentences was admittedly brief, but a fuller explanation was not warranted under the circumstances.  "A lengthy explanation may be particularly unnecessary where a defendant's arguments are 'straightforward [and] conceptually simple' and where a sentencing court imposes a within-Guidelines sentence."  *United States v. Duane*, 533 F.3d 441, 451 (6th Cir. 2008) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

Defendant's counsel specifically requested a within Guidelines sentence, which he stated "would be sufficient to punish and rehabilitate" Defendant for the committed offenses.  Defendant raised no specific objections to the Guidelines calculation in the Presentence Report, nor did he specifically argue that any of the § 3553(a) factors militated in his favor.  The district court considered several factors, including Defendant's criminal history and background as reflected in the Presentence Report, as well as inconsistencies among various aspects of Defendant's suppression hearing and trial testimony.  Defendant at times claimed that he had acquired the gun for self-protection, but at other times denied that he had ever possessed it.  The district court was

warranted in taking this into account because it reflects Defendant's failure to take responsibility. Because Defendant did not request that any particular characteristics or circumstances be taken into account, the district court was not required to go through a complete recitation of the § 3553(a) factors, provided that the court listened to the arguments, was "fully aware" of Defendant's circumstances, and "imposed a sentence that [took] them into account." *Rita*, 551 U.S. at 358. The district court considered the relevant factors in sentencing Defendant within the applicable Guidelines ranges, and his sentence was therefore procedurally reasonable.

Defendant also challenges the substantive reasonableness of his sentence. Our review of a sentence for substantive reasonableness "requires inquiry into . . . the length of the sentence and the factors evaluated . . . by the district court in reaching its sentencing determination." *Herrera–Zuniga*, 571 F.3d at 581 (internal quotation marks omitted). Review for substantive reasonableness focuses on whether a sentence is adequate, but not "'greater than necessary' to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *Id*. at 590. "A sentence may be considered substantively unreasonable when the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008).

The substantive reasonableness inquiry "take[s] into account the totality of the circumstances, including the extent of any variance from the Guidelines range." *Bolds*, 511 F.3d at 581 (quoting *Gall*, 552 U.S. at 51). We "apply a rebuttable presumption of substantive reasonableness" to "sentences within the Guidelines." *Id.* "Regardless of whether we would have imposed the same sentence, we must afford due deference to the district court's decision to determine the appropriate length of the defendant's sentence, so long as it is justified in light of the relevant § 3553(a) factors." *Herrera–Zuniga*, 571 F.3d at 591.

As discussed above, the district court considered several factors when imposing Defendant's sentence, including Defendant's criminal history and background, as well as his failure to take responsibility for his conduct. Defendant asserts that the district

court's failure to consider his status as a father and his enrollment in an electrician training program renders his sentence substantively unreasonable. But these mitigating factors, when weighed in light of the totality of the circumstances, are insufficient to rebut the presumption that his within Guidelines sentence was substantively reasonable. *See United States v. Saffore*, 216 F. App'x 531, 536 (6th Cir. 2007) (finding that a defendant's personal quality as a good father does not render a within Guidelines sentence substantively unreasonable given the defendant's criminal history). The district court did not abuse its discretion because its choice of prison terms was both procedurally and substantively reasonable.

### B.      Decision to Impose Consecutive Sentences

In contrast, the district court provided no explanation whatsoever for its decision that Defendant's two sentences be served consecutively. "If multiple terms of imprisonment are imposed on a defendant at the same time . . . the terms may run concurrently or consecutively." 18 U.S.C. § 3584(a). The exercise of this authority "is predicated on the district court's consideration of the factors listed in 18 U.S.C. § 3553(a), including any applicable Guidelines or policy statements issued by the Sentencing Commission." *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (citing 18 U.S.C. § 3584(b)). Specifically, the policy statement in U.S.S.G. § 7B1.3(f) states:

> Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release.

U.S.S.G. § 7B1.3(f). Although it reads as mandatory, "[t]his policy statement is not binding on the district court, and construing it to be mandatory would be reversible error." *Johnson*, 640 F.3d at 208 (citing *United States v. Sparks*, 19 F.3d 1099, 1101–02 & n.3 (6th Cir. 1994)). Without some explanation of the district court's decision, we are unable to review its application of the § 3553(a) factors or its consideration of the advisory policy statement in U.S.S.G. § 7B1.3(f). *See United States v. Inman*, 666 F.3d

1001, 1004 (6th Cir. 2012) (vacating and remanding a supervised release violation sentence because of inadequate explanation). Indeed, we cannot discern from the record whether the district court considered these materials at all.

Although the district court was not required to state a "specific reason for a consecutive sentence," *Johnson*, 640 F.3d at 208–09 (internal quotation marks omitted), it was nevertheless obliged to make "generally clear the rationale under which it has imposed the consecutive sentence," *United States v. Owens*, 159 F.3d 221, 230 (6th Cir. 1998). The district court need not state its rationale explicitly, but may incorporate by reference a discussion of the relevant considerations in another document such as the Presentence Report. *See United States v. Berry*, 565 F.3d 332, 342–43 (6th Cir. 2009). The district court may also make clear that its reasons for choosing a substantive sentence and for running two sentences consecutively are the same. *See Johnson*, 640 F.3d at 208 (finding that the district court's rationales were "intertwined"). What the district court may not do is say nothing at all. When deciding to impose consecutive sentences, we hold that a district court must indicate on the record its rationale, either expressly or by reference to a discussion of relevant considerations contained elsewhere. Otherwise, meaningful appellate review becomes impossible. *See Inman*, 666 F.3d at 1004.

When the district court in this case sentenced Defendant to serve consecutive sentences, it simply stated that the sentence would be served consecutively, even though Defendant had requested a concurrent sentence at the hearing. Unlike his 41-month sentence on the firearms charge, the district court did not even arguably consider any of the § 3553(a) factors, as it was required to do by § 3584(b), such as Defendant's background, criminal history, or the nature of the offense.[1] Unlike in *Johnson*, the district court did not indicate that its reasons for imposing consecutive sentences were the same as those for which it determined the length of his sentence. *See Johnson*,

---

[1]The district court was not required to consider the factors enumerated in U.S.S.G. § 5G1.3(c) and the relevant commentary, as Defendant argues, because that provision does not apply to sentences imposed for violations of supervised release. *See Johnson*, 640 F.3d at 209 n.8. That provision applies to sentences for convictions that occur while a defendant is on supervised release, not a supervised release violation itself. *Id.*

640 F.3d at 208.  Unlike in *Berry*, the district court did not reference a discussion of the relevant considerations in a sentencing document like the Presentence Report.  *See Berry*, 565 F.3d at 342–43.  Because the district court provided no rationale whatsoever for its decision to impose a consecutive sentence, we have no way to review the reasonableness of that sentence.  Therefore, the district court abused its discretion in imposing a consecutive sentence without adequate explanation.

## CONCLUSION

Based on the foregoing reasons, we **AFFIRM** Defendant's conviction but **VACATE** his supervised release violation sentence and **REMAND** for resentencing.