NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 13a1025n.06

No. 12-2551

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

Dec 11, 2013

DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellee, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| v. | ) | DISTRICT OF MICHIGAN |
| | ) | |
| BRANDON MANLEY, | ) | OPINION |
| | ) | |
| Defendant-Appellant. | ) | |

BEFORE:     COLE and CLAY, Circuit Judges; and BERTELSMAN, District Judge.[*]

COLE, Circuit Judge.  Defendant-Appellant Brandon Manley appeals the district court's imposition of a 33-month prison sentence for violation of the terms of his supervised release. Manley pleaded guilty in two separate but related criminal cases: one involving marijuana trafficking and the other involving a concordant violation of the terms of his supervised release following a prior narcotics conviction.  The district court sentenced Manley to consecutive prison terms of 60 and 33 months, respectively.  On appeal, Manley contends that the district court's 33-month consecutive sentence for violation of his supervised release was both procedurally and substantively unreasonable.  We have appellate jurisdiction despite technical deficiencies in Manley's notice of appeal.  Because his sentence was procedurally and substantively reasonable, we affirm.

_____

[*]The Honorable William O. Bertelsman, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## I. BACKGROUND

### A. Factual Background

Brandon Manley is a repeat criminal offender from the Texas border town of McAllen-Reynosa. While on supervised release stemming from a prior narcotics conviction, he made the ill-fated decision to freight fifty pounds of marijuana from the Mexican border to Detroit, Michigan. Manley did so with the understanding that his co-defendant, Asa Hamilton, would sell the marijuana and pay Manley a share of the proceeds. Upon arrival and delivery in Detroit, Manley waited several days in Hamilton's residence while Hamilton sold the marijuana. While Manley waited, law enforcement agents executed a search warrant at the residence. The agents arrested Manley and seized nearly nineteen pounds of unsold marijuana.

### B. Procedural History and Sentencing

On December 14, 2010, Manley was indicted on drug charges stemming from the search and seizure. His actions also resulted in a supervised release violation petition from authorities in Texas. Manley pleaded guilty to possessing marijuana with the intent to deliver (case number 10-20749). He also pleaded guilty to violating the terms of his supervised release by, among other acts, leaving Texas without his parole officer's permission and illegally possessing a controlled substance (case number 12-20171). The district court conducted a consolidated sentencing hearing for both cases on October 22, 2012. The court explained to Manley that the applicable sentencing guideline ranges were 77 to 96 months in the marijuana trafficking case and 33 to 36 months for his supervised release violation.

The government moved to reduce Manley's sentence under U.S.S.G. § 5K1.1 based on his willingness to testify against a co-defendant. The government recommended a downward departure to 69 months on the marijuana trafficking charge, reflecting a twenty percent reduction from the mid-point of the advisory guideline range. Manley's counsel requested a further departure to 40 months on the trafficking charge, arguing that Manley had provided additional cooperation to law enforcement efforts in Texas and that he was a "changed man." The district court adjourned the hearing because there was some confusion as to whether Manley had in fact provided additional assistance to the prosecution of others while he was incarcerated in Texas.

The district court reconvened the sentencing hearing on November 14, 2012. The parties agreed that Manley had spoken with DEA agents while incarcerated in Texas but disputed whether he provided any actionable leads. The court acknowledged the government's motion for a reduced sentence based on Manley's cooperation against his co-defendant in this case and expressly stated it was also taking into account Manley's alleged cooperation while in Texas.

In addition to Manley's substantial cooperation with law enforcement, the court discussed the other relevant sentencing factors under 18 U.S.C. § 3553(a), including the nature and seriousness of the offenses charged; Manley's history, characteristics, and perceived lack of sincerity; and the need to impose a sentence that would deter Manley from future criminal activity while protecting the public from additional crimes. The court recounted Manley's lengthy criminal history, including a robbery and two prior federal drug convictions, both of which occurred while he was under court supervision. The court then concluded that Manley's "substantial time in prison" had not deterred him from engaging in criminal activity and that he was not, in the court's opinion, a changed man.

Accordingly, the district court sentenced Manley to 60 months in prison in the marijuana trafficking case and 33 months in the supervised release case, to be served consecutively. The court imposed the sentences consecutively with an eye toward deterrence, admonishing Manley that "hopefully this next stint in prison is going to give you additional time to reflect on the choices that you've made and you won't be back here or back in front of another Judge." The court noted that it had discretion under the Sentencing Guidelines to impose the sentences concurrently, but declined to do so "for all the reasons I stated as to why I was imposing the sentence." When asked if she had any objections, Manley's counsel responded, "Just what I've previously requested, Your Honor."

The court then addressed Manley's right to appeal in both cases. Manley waived his right to an appeal in the drug trafficking case under a Rule 11 plea agreement. Nevertheless, the court noted, and the government acknowledged, that Manley maintained all of his appellate rights in the case involving violation of the terms of his supervised release. The court then entered a separate judgment and sentencing order for each case.

## C. The Instant Appeal

Manley now appeals the reasonableness of his 33-month consecutive sentence. Before we may consider the merits of his appeal, we must first determine if we have appellate jurisdiction over this matter. As the government points out, Manley's brief on appeal challenges only the sentence imposed for violation of his supervised release in case number 12-20171. But Manley's notice of appeal did not cite that case. Rather, Manley's notice of appeal cited only the judgment in case number 10-20749—the marijuana trafficking case. Therefore, we must determine whether Manley's inadvertence in noticing his appeal is fatal to our jurisdiction.

## II. APPELLATE JURISDICTION

We review the question whether we have appellate jurisdiction de novo. *United States v. Brown*, 276 F.3d 211, 214 (6th Cir. 2002). We have jurisdiction over appeals "from all final decisions of the district courts of the United States." 28 U.S.C. § 1291. There is no dispute that the district court's consolidated judgment and sentencing order from case number 12-20171, from which Manley purportedly appeals, is a final decision of the district court. However, we must consider whether Manley's notice of appeal is deficient in complying with the filing and content procedures established by Rule 3 of the Federal Rules of Appellate Procedure. A deficiency may present a jurisdictional bar to appeal. *See Smith v. Barry*, 502 U.S. 244, 248 (1992) ("Rule 3's dictates are jurisdictional in nature, and their satisfaction is a prerequisite to appellate review." (citing *Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 316–17 (1988))).

Federal Rule of Appellate Procedure 3 states, in pertinent part, that a notice of appeal must specify the party or parties taking the appeal; designate the judgment, order, or part thereof being appealed; and name the court to which the appeal is taken. Fed. R. App. P. 3(c)(1)(A)-(C). Manley (pro se) and his court-appointed attorney filed duplicate notices of appeal on November 26, 2012. No one disputes that the notices properly named Manley as the party taking the appeal and this court as the appropriate forum. The government, however, argues that the notices improperly designated "the judgment, order, or part thereof being appealed" as required under Rule 3(c)(1)(B).

We find the government's argument unpersuasive. Although Manley's notices of appeal contained a transcription error in naming the judgment being appealed, we may fairly infer which judgment he intended to appeal because, by virtue of his plea agreement, Manley was prohibited

from appealing the judgment in his marijuana trafficking case. Thus, the error is not a jurisdictional

bar because Manley's notices of appeal "ha[d] the practical effect" of designating the judgment,

order, or part thereof being appealed. *See Dillon v. United States*, 184 F.3d 556, 557 (6th Cir. 1999)

(en banc). Under these circumstances, Manley's notices complied with Rule 3(c)(1)(B). We

therefore have appellate jurisdiction in this matter, and we turn to the merits of his appeal.

## III. ANALYSIS

### A. Standard of Review

This court reviews sentences for procedural and substantive reasonableness. *Gall v. United*

*States*, 552 U.S. 38, 51 (2007). A sentence is procedurally unreasonable if the district court

committed "significant procedural error, such as failing to calculate (or improperly calculating) the

Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors,

selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen

sentence." *Id.* If the district court's sentencing decision is procedurally sound, we must then

consider the substantive reasonableness of the sentence. *United States v. Coleman*, 664 F.3d 1047,

1048 (6th Cir. 2012) (citing *Gall*, 552 U.S. at 51). "The sentence may be substantively unreasonable

if the district court chooses the sentence arbitrarily, grounds the sentence on impermissible factors,

or unreasonably weighs a pertinent factor." *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir.

2011) (citing *United States v. Conatser*, 514 F.3d 508, 520 (6th Cir. 2008)).

We typically employ the abuse of discretion standard to review the reasonableness of

criminal sentencing. *United States v. Gunter*, 620 F.3d 642, 645 (6th Cir. 2010). Nevertheless,

where, as here, the defendant "fails to lodge any objection at the end of the sentencing hearing in

response to a properly worded [*Bostic*] invitation . . . we review only for plain error a challenge to the district court's explanation for the sentence selected." *Id.* (citing *United States v. Vonner*, 516 F.3d 382, 385–86 (6th Cir. 2008) (en banc)). Accordingly, with respect to Manley's procedural claim, he must show "(1) error, (2) that was obvious or clear, (3) that affected his substantial rights, and (4) [that] affected the fairness, integrity, or public reputation of his judicial proceedings." *Gunter*, 620 F.3d at 645.

We consider the substantive reasonableness of the sentence under an abuse of discretion standard. *United States v. Berry*, 565 F.3d 332, 341 (6th Cir. 2009). We will affirm a sentence under this standard so long as it is "reasonable." *Id.* Further, we afford a rebuttable presumption of reasonableness to a sentence within the properly calculated Guidelines range, which reflects the fact that both the sentencing judge and the Sentencing Commission have reached the same conclusion as to the proper sentence. *Id.*

**B. Reasonableness of Sentencing**

Manley alleges that the sentence is procedurally unreasonable because the district court failed to explain its reasoning for rejecting Manley's arguments regarding his troubled past and his efforts to get his life back on track. Manley alleges that the sentence is substantively unreasonable for similar reasons: namely, that the court gave too much weight to Manley's criminal history and not enough weight to his personal history and characteristics. We address each argument in turn.

*1. Procedural Reasonableness*

Manley challenges the procedural reasonableness of his sentence based on the district court's alleged failure "to adequately explain the sentence imposed and to adequately consider [his] other

non-frivolous arguments contained in his sentencing memorandum." The government counters that the court's sentencing explanation was more than sufficient. On balance, the government has the better of the argument, particularly so given the deference we afford under plain error review.

On appeal, the crucial question is whether the sentencing record "'makes clear that the sentencing judge listened to each argument,' 'considered the supporting evidence,' was 'fully aware' of the defendant's circumstances and took 'them into account' in sentencing him." *Vonner*, 516 F.3d at 387 (quoting *Rita v. United States*, 551 U.S. 338, 358 (2007)). We stress that courts "would do well to say more" when explaining their sentences to "ensure that the defendant, the public and, if necessary, the court of appeals understood why the trial court picked the sentence it did." *Id.* at 386. Nevertheless, a district court need not "give the reasons for rejecting any and all arguments by the parties for alternative sentences." *Id.* at 387. Rather, "[i]t is sufficient if the district judge sets forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority." *United States v. Lapsins*, 570 F.3d 758, 773 (6th Cir. 2009) (citation, brackets, and internal quotation marks omitted).

Manley filed a sentencing memorandum with the court setting out the facts of his troubled past. But neither Manley nor his attorney mentioned those facts during his sentencing hearing. Instead, Manley focused his mitigation arguments on the fact that he had cooperated with law enforcement and that the past 21 months in prison had rendered him a changed man.

The court acknowledged Manley's sentencing memorandum and listened to his mitigation arguments, asking on several occasions if Manley or his attorney had anything more to offer. When Manley and his attorney concluded, the court considered the supporting evidence at length,

addressing first the matter of Manley's cooperation with law enforcement.  Manley concedes on

appeal that the court "did sufficiently discuss Mr. Manley's [mitigation] argument" regarding the

assistance he rendered to the government.

The court then proceeded to discuss other relevant sentencing factors, including Manley's

personal history and characteristics and whether he was indeed a changed man:

> THE COURT: And Mr. Manley, . . . there are a number of other factors that the Court must consider in figuring out the appropriate sentence and this record of criminal activity that has led to your career offender status is very troubling to the Court as I consider your history, your characteristics, as I consider what kind of sentence might perhaps get you to respect the law, to reflect how serious the offenses are and I guess quite importantly, to fashion a sentence that is going to provide adequate deterrence and to protect the public from additional crimes.
>
> Crimes that you've been convicted of are – they're serious crimes, Mr. Manley.  We have a robbery first of all.  We have [several drug offenses].  You served substantial time in prison already and that hasn't deterred you from getting involved in criminal activity or from engaging in criminal activity even while you are under court supervision, and those things are something that I pay a lot of attention to.  I'm very prepared to give people a break when there hasn't been a lot of time served and the desire to lead a law-abiding life seems to be sincere, but it's very difficult for me to believe now that what you're telling the Court is a sincere desire to lead a law-abiding life because you've had all these opportunities.  You've been on supervision.  You've had your freedom and you keep doing things that result in your freedom being taken away and doing things that continue to endanger the public.  Those are my considerations.
>
> I think that the Government has been generous in making its recommendation on your behalf. . . .  [H]opefully this next stint in prison is going to give you additional time to reflect on the choices that you've made and you won't be back here or back in front of another Judge.

The district court then proceeded to tailor its sentencing based on Manley's "history of

violence and mental health history," as well as his stated "love of cooking," thus belying Manley's

argument that the court ignored his troubled past or personal characteristics.  At Manley's urging,

the court recommended that he be sentenced to a correctional facility with both a comprehensive drug treatment program and a culinary arts program. This recommendation shows sensitivity to Manley's troubled past as well as his personal characteristics and desires for reform. The court also placed conditions on Manley's supervised release to account for what Manley characterizes on appeal as a "tumultuous upbringing." The court ordered that he participate in approved programs for mental health counseling, anger management, and cognitive therapy.

Based on the sentencing transcript, we cannot conclude that the district court erred in articulating its explanation for Manley's sentence—much less that any perceived error was "obvious or clear." The district court listened to, considered, and accounted for Manley's cooperation with law enforcement efforts in the instant case as well as his alleged cooperation while he was incarcerated in Texas. Moreover, the court specifically addressed and rejected Manley's assertion that he was a changed man, noting that under the totality of the circumstances, "it's very difficult for me to believe now that what you're telling the Court is a sincere desire to lead a law-abiding life because you've had all these opportunities." Given that the only timeframe Manley could point to in support of his "consistent effort to get his life on the right path" occurred while he was in prison, the court's rejection of this mitigation argument was justified.

Although the district court gave less attention to Manley's sentencing memorandum arguments regarding his troubled past, the court's action is understandable given that neither Manley nor his attorney placed any emphasis on those arguments during the sentencing hearing. *See United States v. Madden*, 515 F.3d 601, 611 (6th Cir. 2008) ("[A] sentencing judge is not required to explicitly address every mitigating argument that a defendant makes, particularly when those

arguments are raised only in passing."). We note that the district court did briefly mention Manley's history and characteristics as factors in its sentencing decision, but that other factors, including the need for punishment and deterrence, appeared to have weighed more heavily in the court's calculus. We have, in the past, affirmed sentences based on shorter and less satisfying explanations. *See Vonner*, 516 F.3d at 386, 389 ("No one would call this explanation ideal. It did not specifically address all of [defendant's] arguments for leniency . . . . [But] it bears emphasizing that there is a sizeable gap between good sentencing practices and reversibly bad sentencing practices."); *see also Lapsins*, 570 F.3d at 773–74; *Berry*, 565 F.3d at 340–41; *United States v. Casey*, 480 F. App'x 811, 814 (6th Cir. 2012).

Manley cites two cases in support. Both are distinguishable on their facts. In *United States v. Peters*, 512 F.3d 787, 788–89 (6th Cir. 2008), we reversed and remanded a district court sentence because the court provided nothing more than a "cursory statement" acknowledging the defendant's mitigation arguments. Similarly, in *United States v. Thomas*, 498 F.3d 336, 341 (6th Cir. 2007), we vacated a sentence because the district court's reasoning consisted entirely of a statement that the court had received, read, and understood the defendant's sentencing memorandum. There, "the district court considered the applicable Guidelines range, but not much else." *Id.* at 340. Accordingly, we vacated the sentence because "the context and the record" did not "make clear the court's reasoning." *Id.* at 341 (citations and internal quotation marks omitted).

Here, it is plain from the sentencing transcript that the district court acknowledged that it had received Manley's sentencing memorandum, properly calculated the applicable Guidelines range, weighed the relevant § 3553(a) factors, and took into account Manley's mitigation arguments. That

is all we require. *United States v. Petrus*, 588 F.3d 347, 354 (6th Cir. 2009). We note that "it is preferable for district courts to explicitly address every nonfrivolous argument raised by a defendant" for a variety of reasons. *United States v. Herrod*, 342 F. App'x 180, 185 (6th Cir. 2009) (Clay, J., concurring). But brevity alone does not constitute reversible error. *Petrus*, 588 F.3d at 355. Here, as in other cases, the district court might have said more during the sentencing hearing regarding Manley's troubled past. But the court's decision to focus its attention on other matters does not transform its reasoned and otherwise lengthy sentencing explanation into reversible error.

Accordingly, we need not reach the issues of whether any alleged error affected Manley's substantial rights or the fairness, integrity, or public reputation of his judicial proceedings. We turn instead to consideration of Manley's claim that his sentence was substantively unreasonable.

### 2. *Substantive Reasonableness*

In his second assignment of error, Manley alleges that the 33-month consecutive sentence imposed for violation of the terms of his supervised release is substantively unreasonable. Because Manley's sentence is within (indeed, at the low-point of) the Guidelines range of 33 to 36 months for his supervised release violation, we presume the sentence is substantively reasonable. *United States v. Bolds*, 511 F.3d 568, 581 (6th Cir. 2007). Manley offers little to rebut that presumption. Accordingly, his second assignment of error is without merit.

In reviewing claims for substantive reasonableness, we focus on whether a sentence "is adequate, but not greater than necessary to accomplish the sentencing goals identified by Congress in 18 U.S.C. § 3553(a)." *United States v. Cochrane*, 702 F.3d 334, 345 (6th Cir. 2012) (citation and internal quotation marks omitted). We may consider a sentence substantively unreasonable "when

the district court selects a sentence arbitrarily, bases the sentence on impermissible factors, or gives an unreasonable amount of weight to any pertinent factor." *Id.* (quotation omitted). Manley alleges only that the district court unreasonably weighed his criminal history in relation to his personal history and characteristics, not that his sentence was arbitrary or based on impermissible factors.

The district court's sentencing colloquy demonstrates that the court paid sufficient attention to all relevant sentencing factors. *See* 18 U.S.C. 3553(a). The court discussed the nature and circumstances of the offense and the history and characteristics of the defendant, *id.* § 3553(a)(1), including his propensity to violate the terms of his supervised release. The court noted that Manley had previously violated the terms of his court supervision by committing new crimes even after he was released on parole or supervision in each of his prior three convictions. Moreover, the court discussed the need for the sentence imposed. *Id.* § 3553(a)(2). The court highlighted the seriousness of the offense and the court's objectives of providing just punishment, fashioning a sentence that would provide adequate deterrence and protect the public from additional crimes, and providing Manley with medical care and continued vocational and educational training.

Manley's allegation that the court "failed to balance [his] criminal history with [his] personal characteristics" falls short under our precedents. *See, e.g.*, *Cochrane*, 702 F.3d at 345 (holding that mitigating factors must be weighed in light of the totality of the circumstances, including a defendant's criminal history and background); *United States v. Garza*, 478 F. App'x 995, 996 (6th Cir. 2012) (holding that a 33-month supervised release sentence, 24 months of which were consecutive, was reasonable where the defendant, while on supervised release, returned to the same type of behavior underlying his original conviction); *United States v. Saffore*, 216 F. App'x 531, 536

(6th Cir. 2007) (finding that a defendant's personal qualities and desire to be a productive member of society does not render a within-Guidelines sentence substantively unreasonable given the defendant's criminal history). Here, the district court similarly listened to, considered, and rejected Manley's mitigation arguments before fashioning his within-Guidelines sentence.

Nor, as Manley argues, does the district court's decision to impose a *consecutive* sentence render it substantively unreasonable. The decision to impose a consecutive sentence is generally left to the discretion of the district court. *United States v. Johnson*, 640 F.3d 195, 208 (6th Cir. 2011) (citing 18 U.S.C. § 3584(a)). We require only that the court acknowledge that consecutive sentences are not mandatory and that the court explain its rationale for imposing them. *Id.* at 208–09. Here, the district court satisfied both requirements. When Manley's attorney urged the court to impose the sentence concurrently, the court responded, "I know that I have that discretion . . . and for all the reasons I stated as to why I was imposing the sentence, I decline to exercise that discretion to impose a concurrent sentence." Referencing a discussion of relevant sentencing considerations contained elsewhere, as the court did here, satisfies our requirement that the court explain its rationale. *Id.* at 208; *Cochrane*, 702 F.3d at 346.

Consequently, we hold that Manley's sentence was both procedurally and substantively reasonable. We note that the court's imposition of a 33-month consecutive sentence—even when added to the 60-month sentence that Manley received for his marijuana trafficking conviction—still falls within the guideline range of 77 to 96 months that Manley agreed to in his plea agreement for the trafficking offense alone, further underscoring the overall reasonableness of the sentence.

## V.  CONCLUSION

For the foregoing reasons, we affirm the district court's imposition of Manley's 33-month consecutive prison sentence.